IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Cencast Services, L.P., et al., ) | |
|                       Plaintiffs, ) | Case Numbers: 02-1916 T, 02-1917 T, 02-1918 T, 02-1919 T, 02-1920 T, 02-1921 T, 02-1922 T, 02-1923 T, 02-1924 T, 02-1925 T |
|     v. ) | |
| United States of America, ) | Judge George W. Miller |
|                       Defendant. ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Orders of September 2 and September 11, 2009, the parties respectfully submit this Joint Status Report.

**I.    Revised Studio and Production Worker Subpoenas**

In compliance with the Court's Order, the parties discussed revisions to the Production Worker and Studio Subpoenas, as those terms are defined in the Court's September 2 Order. They have reached agreement on three major areas with respect to those subpoenas, but remain in disagreement as to one matter pertaining to the Production Worker Subpoena.

First, both parties confirmed that the subpoenas will only request documents specific to a production. In order to clarify this point, the parties have revised both subpoenas to clarify each specific request. For example, in the case of "call sheets," the language has been changed to read "call sheets that relate to the production." Those changes are reflected in the parties' proposed Studio Subpoena, attached hereto as Exhibit A, and each party's proposed Production Worker Subpoenas, attached hereto as Exhibits B and C.

Second, the parties have agreed to modify the Production Worker Subpoena to draw a distinction between production worker-specific documents and production documents. Those

documents that are being sought only for certain production workers are now listed in Exhibit A to the Production Worker Subpoenas.

Third, the parties discussed proposed revisions to the category of documents identified in paragraph 2(b) of the Court's September 2 Order. The parties are in agreement as to the categories of documents that should be added to both the Production Worker and Studio Subpoenas. The category "all documents filed with any state or federal government, agency or court in which you represented any production worker to be an employee of yours, [production company's] or any of the plaintiffs listed as Exhibit B" has been further specified to request the following documents:

- Filings with the National Labor Relations Board that relate to work on the production.

- Filings with the Equal Employment Opportunity Commission that relate to work on the production.

- Correspondence with any state or federal taxing authority concerning notices of levy or other tax collection matters that relate to work on the production.

- Documents filed with any federal court in any copyright lawsuit relating to ownership of any copyright in the production.

- Documents filed with any state or federal court relating to any dispute with a union or guild that relates to work on the production.

As a consequence of these agreements, the parties have reached an agreed upon Studio Subpoena, attached hereto as Exhibit A.

The parties have been unable to reach an agreed upon Production Worker Subpoena with respect to one request; the scope of the request for "communications regarding hiring/firing of a production worker from the production." The parties' respective positions regarding this matter are set forth below. Neither party has reviewed the other's statement.

**II.      Plaintiffs' Statement**

Although the parties have reached agreement on almost all aspects of the joint document subpoena, Plaintiffs object to Defendant's request for all communications regarding hiring and firing of production workers in the Production Worker Subpoena. Plaintiffs believe this request should be limited to production workers who are part of the sample set agreed to by the parties. This request seeks highly personal information from non-parties, and it is overreaching to ask for that information for production workers who are not part of the sampled group of production workers.

This request is unlikely to lead to the discovery of relevant evidence. The purpose of the Production Worker Subpoena is to determine whether the sampled production workers were employees or independent contractors for purposes of ascertaining the amount of Plaintiffs' setoff against the Defendant's claim of employment taxes. Information about the hiring and/or firing of non-sampled production workers sheds no light on whether a sampled production worker was an independent contractor or employee. Limiting this request to sampled production workers strikes the necessary balance between protecting the privacy of production workers and allowing the parties to gather sufficient information to support their claims in this case. As a result, Plaintiffs believe that this request should be included in Exhibit A of the Plaintiffs' Proposed Production Worker Subpoena (attached hereto as Exhibit B) under the category of "Documents or Information Concerning Specific Production Workers Associated With the Production During 199_ to 199_."

**III.     Defendant's Statement**

The sole remaining dispute between the parties with respect to the Independent Contractor subpoena pertains to the scope of the request for "communications regarding hiring/firing of a production worker from the production." Defendant seeks inclusion of the

request such that it would seek all such documents with respect to the sampled production (*i.e.* not limited to sampled production workers).  Plaintiffs wish to narrow the scope of the request so that it pertains *only* to sampled production workers.  The Court should adopt Defendant's request, as embodied in defendant's proposed joint subpoena (attached hereto as Ex. C).

The Independent Contractor issue—assuming it survives defendant's anticipated motion for summary judgment (which it likely will not)—requires discovery of facts that would distinguish between employees and independent contractors.  *See* IRC §§ 3121(d)(2); 3306(i); Treas. Reg. 31.3121(d)-1; *see also Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1,3 (1962).  The United States Supreme Court has stated that whether a hired party is an employee under the general common law of agency requires the Court to:

> consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the factors relevant to this inquiry are the skill required, the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52 (1989) (citations omitted).

Revenue Ruling 87-41, 1987 Cum. Bull 296, 298-99 provides a twenty factor guide to help determine whether a hired party is an employee or independent contractor for tax purposes.[1]  One such factor is the right to discharge.  *Id.*  "The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer."  *Id.*

---

[1] The twenty factor guide set forth in Revenue Rule 87-41, 1987 Cum. Bull. 296, 298-99, is a non-exhaustive list, and this Court must consider "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *See Nationwide Mut. Ins.*, 503 U.S. at 324 (quoting *NLRB*, 390 U.S. at 258).

As Revenue Ruling 87-41 makes clear, the right to discharge has two elements: the existence of the right and the person possessing the right. Consequently, to fully develop that factor it may be necessary to discover facts not just about the sampled production workers, but also about the sampled production (and each of the entities involved in the making of that production). Limiting the request for "communications regarding hiring/firing of a production worker from the production" to only the twenty production workers sampled on any one production will likely *not* yield sufficient facts to reliably identify who possessed and exercised the right to hire and fire production workers from the *sampled production*. Indeed, it is possible that the vast majority of such communications will not reference specific production workers and, therefore, not be responsive under plaintiffs' subpoena. Were that the case, the parties and this Court would miss out on information vital to the "right to terminate" factor. Thus, this Court should adopt defendant's proposal, the only proposal which makes the proper, production-wide inquiry.[2] (*See also* Def's Aug. 28, 2009, Status Rpt. § I.B.)

In discussions between counsel, plaintiffs objected to defendant's recommendation in part on the grounds that the information sought is "highly personal information." The objection does not hold weight. As this Court is well aware, there is a significant volume of "highly confidential" personal information already involved in this case, including plaintiffs' payroll

---

[2]Furthermore, the purpose in sampling productions was to limit the number of productions into which to inquire, while the purpose in sampling production workers was to limit the number of *workers* from whom to seek discovery. Only twenty productions were included in plaintiffs' initial sample set, and the parties and the Court ought to learn as much as they can about each of those twenty productions.

It is also important to remember that defendant has *never* adopted plaintiffs' proposed sampling approach to generating evidence on the Independent Contractor issue, nor otherwise agreed to limit its discovery to that plan. Rather, defendant, at this Court's request, advised plaintiffs on its potential objections to that plan. Nonetheless, defendant has attempted, to the extent possible, to conduct its discovery within the twenty sampled productions so that the parties *might* avoid inquiry into all approximately 1,800 productions.

data, the Bates White database, documents in the administrative file, and documents sought regarding sampled production workers and sampled productions. Defendant's one additional request will not substantially add to the volume of "highly confidential" information involved in this case, and plaintiffs have not explained how the requested information is any different than the other personal information sought. Moreover, this Court has already entered a Protective Order permitting such information to be designated "highly confidential" and, upon such designation, limiting both to whom such information may be disclosed and the manner in which such disclosure may be accomplished. Given the volume of personal information already involved and the Protective Order entered by this Court the personal nature of such communications should not prevent discovery of that information.[3]

Dated: September 17, 2009

By: *s/Kent A. Yalowitz*
Kent A. Yalowitz
*Counsel of Record*
Amalia W. Jorns
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

James P. Joseph
ARNOLD & PORTER LLP
555 Twelfth Street N.W.
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Plaintiffs*
*Cencast Services, L.P., et al.*

---

[3] Plaintiffs also object that the broader request does not yield information about the sampled production worker. But as explained above, this Court should inquire not just into the production worker, but also the production and each of the entities involved in its making. Plaintiffs' proposed joint subpoena falls short of that mark.

- 7 -

Dated: September 17, 2009           By: *s/Fredrick C. Crombie*
                                                      FREDRICK C. CROMBIE
                                                      Attorney of Record
                                                      U.S. Department of Justice
                                                      Tax Division
                                                      Court of Federal Claims Section
                                                      Post Office Box 26
                                                      Ben Franklin Post Office
                                                      Washington, D.C.  20044
                                                      (202) 305-2165
                                                      (202) 514-9440 (facsimile)

                                                      JOHN A. DiCICCO
                                                      Acting Assistant Attorney General
                                                      STEVEN I. FRAHM
                                                      Chief, Court of Federal Claims Section
                                                      MARY M. ABATE
                                                      Assistant Chief

                                                      *s/Mary M. Abate*
                                                      MARY M. ABATE

                                                      *Attorneys for Defendant*