# In the United States Court of Federal Claims

Nos. 02-1916 T, 02-1917 T, 02-1918 T, 02-1919 T, 02-1920 T,
02-1921 T, 02-1922 T, 02-1923 T, 02-1924 T, 02-1925 T
(Filed November 2, 2009)
NOT FOR PUBLICATION

| | | |
|---|---|---|
| CENCAST SERVICES, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Tax refund case; partial summary judgment; RCFC 56(c); Federal Unemployment Tax Act ("FUTA"); FUTA wage base; state unemployment insurance credits; Internal Revenue Code § 3302 |

   Kent A. Yalowitz, Arnold & Porter LLP, New York, N.Y., Attorney of Record for plaintiffs.  Amalia W. Jorns, Arnold & Porter, LLP, New York, N.Y., James P. Joseph, Arnold & Porter LLP, Washington, D.C., of counsel.

   Frederick C. Crombie, Attorney of Record for defendant.  Michael Roney, Trial Attorney, Allison Ickovic, Trial Attorney, Mary M. Abate, Assistant Chief, Steven I. Frahm, Chief, Court of Federal Claims Section, John A. DiCicco, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., of counsel.

### OPINION AND ORDER

GEORGE W. MILLER, Judge

   Plaintiffs in these consolidated tax refund cases have moved for partial summary judgment seeking an order entitling them to an additional State Unemployment Insurance credit against the IRS's assessment of Federal Unemployment Tax Act ("FUTA") taxes for the 1991 to 1996 tax years.  For the reasons set forth below, plaintiffs' motion is **GRANTED**.

**I.      Background**[1]

The Government requires employers to pay various categories of payroll taxes based upon the amount of wages earned by employees, which, as all employees know, are generally withheld from the employees' paychecks.  This case involves two of those categories of taxes: the Federal Income Contribution Act ("FICA") and FUTA taxes allegedly owed by plaintiffs, entities that provided payroll services to Hollywood movie production companies.  Plaintiffs entered into agreements with production workers to facilitate payment of the workers' wages.  As part of the agreement, plaintiffs would place the workers on projects at the various production companies.  The workers would submit records to plaintiffs showing the amount of time they worked on each specific production.  Plaintiffs would then pay the workers out of their own funds, withholding amounts due pursuant to FICA and FUTA, which they paid over to the Government.  Finally, the production companies would reimburse plaintiffs for the salaries of the workers.

The underlying dispute in this case involves determining which entity should be treated as the workers' employer for FICA and FUTA purposes.  Broadly speaking, for FICA, the employer must pay taxes on up to $50,000 in wages earned by the employee (the "wage base").[2]  I.R.C. § 3121(a)(1); *Cencast Servs.*, 62 Fed. Cl. at 160.  Importantly, however, the wage base is calculated on a per-employer basis.  Thus, if "the employee received $50,000 in remuneration from two employers, the $50,000 in remuneration received from each employer ($100,000 total) would be deemed wages for FICA tax purposes." *Cencast Servs.,* 62 Fed. Cl. at 160 (internal quotation omitted).  FUTA taxes operate similarly, but are based upon a $7,000 wage base per employer.  I.R.C. § 3306(b)(1); *Cencast Servs.,* 62 Fed. Cl. at 161.

For the tax years 1991 through 1996, plaintiffs treated themselves as the workers' employers and thus paid FICA and FUTA taxes upon wage bases of $50,000 and $7,000, respectively, for each worker.  *Cencast Servs.,* 62 Fed. Cl. at 163.  In 2001, however, the IRS took the position that the production companies, not plaintiffs, should have been treated as the employers for FICA and FUTA purposes.  *Id.*  Because the wage base applied separately to each production company, the wage base as calculated by the IRS was much higher than that calculated by plaintiffs.  The IRS therefore alleged that plaintiffs had underpaid the FICA and FUTA taxes and issued an assessment for additional tax due based upon this higher wage base. *Id.*  This Court previously found that, for purposes of both FICA and FUTA, the proper employer

---

[1] See *Cencast Services, L.P. v. United States,* 62 Fed. Cl. 159, 162-63 (2004), for a full discussion of the underlying facts.  This opinion reviews only the facts relevant to the pending motion.

[2] The Internal Revenue Code excludes from the definition of "wages" any amounts paid to an employee over the statutory FICA and FUTA amounts.  *Cencast Servs.*, 62 Fed. Cl. at 161-62.  In other words, the statutory amount "functions as a cap on wages that are taxable under FUTA." *Id.*  The taxable wages (that is, payments an employee receives up to the amount of the statutory cap) are the "wage base" upon which FICA and FUTA taxes are paid.  *Id.*; *see also* I.R.C. §§ 3306(b)(1), 3121(a)(1).

is the production workers' common-law employer. *Id.* at 166. This Court also found that plaintiffs' control over the workers' pay by itself was not sufficient to demonstrate that they were the workers' employers for FICA or FUTA purposes. *Id.* at 179. The parties have since been engaged in discovery regarding identification of the production workers' common-law employer.

The present motion relates only to plaintiffs' FUTA taxes, because those taxes are reduced by amounts paid for State Unemployment Insurance, which the Court refers to as the "SUI credit." Under I.R.C. § 3302, the taxpayer is permitted to list two "tentative" SUI credits on its tax return: First, the taxpayer may list a tentative credit for the amount of money it actually paid into a qualified SUI fund (the "§ 3302(a) credit"). I.R.C. § 3302(a)(1).[3] Second, the taxpayer may list an additional tentative "good faith" credit for the amount that the employer's contribution rate to a qualified SUI fund was less than the highest contribution rate under that state's law, or a contribution rate of 5.4%, whichever is less (the "§ 3302(b) credit"). I.R.C. § 3302(b)[4]; Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment on State Unemployment Insurance Credits ("Def.'s Mem.") at 2-3 (docket entry 176, Aug. 5, 2009).

The actual total SUI credit the taxpayer may take, however, is capped at 5.4% of the taxpayer's total FUTA wage base. I.R.C. § 3302(c); Def.'s Mem. at 3. Thus to determine a taxpayer's allowable SUI credit, one must calculate (1) the total tentative credits (the § 3302(a) credit plus the § 3302(b) credit); and (2) the maximum actual SUI credit permitted under the cap, namely, 5.4% of the taxpayer's total FUTA wage base. The lesser of the two will be the

---

[3] I.R.C. § 3302(a)(1) provides:

The taxpayer may, to the extent provided in this subsection and subsection (c), credit against the tax imposed by section 3301 the amount of contributions paid by him into an unemployment fund maintained during the taxable year under the unemployment compensation law of a State which is certified as provided in section 3304 for the 12-month period ending on October 31, of such year.

[4] I.R.C. § 3302(b) provides:

**Additional credit.** In addition to the credit allowed under subsection (a), a taxpayer may credit against the tax imposed by section 3301 for any taxable year an amount, with respect to the unemployment compensation law of each State certified as provided in section 3303 for the 12-month period ending on October 31 of such year, or with respect to any provisions thereof so certified, equal to the amount, if any, by which the contributions required to be paid by him with respect to the taxable year were less than the contributions such taxpayer would have been required to pay if throughout the taxable year he had been subject under such State law to the highest rate applied thereunder in such 12-month period to any person having individuals in his employ, or to a rate of 5.4 percent, whichever rate is lower.

taxpayer's actual allowable SUI credit.  Plaintiffs claim, and the Government agrees, that plaintiffs are entitled to an additional SUI credit to offset the increased FUTA taxes that the Government asserts are due.  The Government concedes that the IRS improperly used plaintiffs' original FUTA wage base, rather than the Government's higher wage base, in computing the amount of plaintiffs' total allowable SUI credit.

## II.     Legal Standards

The Court may grant summary judgment if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c) of the Rules of the Court of Federal Claims ("RCFC"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine issue exists if the evidence could support a finding for the non-moving party.  *Liberty Lobby*, 477 U.S. at 255.  A fact is material if it might affect the outcome of the suit.  *Id*. at 248.  "Any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party."  *M.A. DeAtley Constr., Inc. v. United States*, 75 Fed. Cl. 812, 814 (2007).  The Court may deny summary judgment if "there is reason to believe that the better course would be to proceed to a full trial."  *Liberty Lobby*, 477 U.S. at 255.

## III.    Discussion

The parties agree as to all material facts related to the motion.  From 1991 to 1996, plaintiffs reported their FUTA taxes as the production workers' employers.  *See* Plaintiffs' Proposed Findings of Uncontroverted Fact in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Proposed Findings") ¶ 1 (docket entry 148, June 5, 2009); Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact in Support of Plaintiffs' Motion for Partial Summary Judgment ("Def.'s Proposed Findings") ¶ 1 (docket entry 197, Sept. 21, 2009).  During these years, plaintiffs paid a total of $17,642.197.70 in FUTA taxes.[5]  Def.'s Proposed Findings ¶ 2.  The IRS then issued an assessment for underpayment of FUTA taxes in the amount of $43,676,472.  Pls.' Proposed Findings ¶¶ 7, 8; Def.'s Proposed Findings ¶¶ 7, 8.  Both parties agree that after the IRS asserted that plaintiffs were not the workers' employers and assessed additional FUTA taxes, the plaintiffs had a higher FUTA wage base, but that the IRS

---

[5] Plaintiffs initially calculated their total FUTA taxes at $17,641,382.  Pls.' Proposed Findings  ¶ 2.  The Government responded that plaintiffs' expert made computations based on negative § 3302(b) credits.  Def.'s Mem. at 3-4 n.3; Transcript of August 17, 2009 Status Conference ("Status Conf. Tr.") at 9 (docket entry 184, Aug. 25, 2009).  The IRS does not use negative numbers in calculating credits, however, so these negative numbers should have been increased to zero.  Def.'s Mem. at 3-4 n.3; Status Conf. Tr. at 9.  The Government, therefore, proposed a slightly higher number, $17,642,197.70, which in turn increased the SUI credits to which plaintiffs would be entitled.  Def.'s Mem. at 3-4 n.3.  Plaintiffs have conceded that the Government's calculations are correct.  *See* Reply in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Reply") at 1 (docket entry 177, Aug. 17, 2009); Status Conf. Tr. at 8-10.  Use of the Government's higher figure affects some of the subsequent credit calculations.  Because there is no dispute, the Court has used the Government's higher figure.

did not calculate a new actual SUI credit based on this higher wage base.  Pls.' Proposed Findings ¶12; Def.'s Proposed Findings ¶ 12.

### A. *Plaintiffs' SUI Credits before the IRS Assessment*

Before the 2001 assessment, plaintiffs calculated their total FUTA wage base for tax years 1991 to 1996 to be $2,204,504,216.68.  Def.'s Proposed Findings ¶¶ 9, 10.  Plaintiffs reported a § 3302(a) credit of $94,377,832 and a § 3302(b) credit of $36,940,927.  Pls.' Proposed Findings ¶¶ 3, 4; Def.'s Proposed Findings ¶¶ 3, 4.  Thus, although plaintiffs' two tentative SUI credits totaled $131,318,759, the maximum SUI credit to which plaintiffs were entitled—5.4% of plaintiffs' pre-assessment FUTA wage base—was $119,043,228.[6]  Pls.' Proposed Findings ¶ 6; Def.'s Proposed Findings ¶ 6.  Due to the § 3302(c) cap, plaintiffs were only permitted to take an actual SUI credit of the lesser of the two numbers, $119,043,228.  I.R.C. § 3302(c).  The cap accordingly resulted in "unused" tentative SUI credits above the 5.4% cap, in the amount of $12,275,531.30.  Pls.' Proposed Findings ¶ 14; Def.'s Proposed Findings ¶ 14.

### B. *The IRS Assessment and the New FUTA Wage Base*

After the IRS took the position that the production companies were to be considered the employers for FUTA purposes, the IRS increased plaintiffs' FUTA wage base by $704,490,868.58—that is, to a total wage base of $2,908,995,085.26.  Def.'s Proposed Findings ¶¶ 9, 10.  The IRS applied the 6.2% FUTA tax rate to the newly increased FUTA wage base, resulting in a total deficiency assessment of $43,676,472.  Pls.' Proposed Findings ¶¶ 7, 8; Def.'s Proposed Findings ¶¶ 7, 8.  The IRS did not, however, recalculate plaintiffs' SUI credit based on the new, higher FUTA wage base.  Instead, the IRS allowed a credit for 5.4% of the original FUTA wage base—a total credit of $119,041,737.87.[7]  Pls.' Proposed Findings ¶ 12; Def.'s Proposed Findings ¶ 12.

---

[6] The parties have apparently rounded to $119,043,228.  As is shown in the Appendix, 5.4% of the original FUTA wage base is actually $119,043,227.70.  Given the parties' agreement, the Court will refer to the parties' rounded number.

[7] There is a slight discrepancy between the maximum SUI credit as calculated from plaintiffs' original FUTA wage base—5.4% of $2,204,504,216.68, or $119,043,228, Pls.' Proposed Findings ¶ 6; Def.'s Proposed Findings ¶ 6—and the amount credited by the IRS after the assessment, namely, $119,041,737.87.  Pls.' Proposed Findings ¶ 12; Def.'s Proposed Findings ¶ 12.  The latter number is necessary to arrive at the $12,277,021.13 figure that both parties agree the Government's theory requires to be subtracted from the Government's counterclaim as an additional SUI credit, since the parties agree that the actual SUI credit available is $131,318,759.00.  That is, $131,318,759.00 (actual credit available) *minus* $12,277,021.13 (agreed additional credit owed) *equals* $119,041,737.87 (amount already credited by IRS).  Def.'s Proposed Findings ¶ 13.  It appears that the disparity results from the plaintiffs' mistaken use of negative § 3302(b) credits in calculating the SUI credits set forth on their returns.  *See supra* note 5.

### C. *Plaintiffs' Actual SUI Credit Based on the Increased FUTA Wage Base*

As noted above, plaintiffs' total tentative SUI credits prior to the 2001 assessment were $131,318,759, although plaintiffs' original wage base was too low to allow them to use this entire amount as an actual credit. But 5.4% of the new, increased FUTA wage base is $157,085,734.60. Def.'s Proposed Findings ¶ 13. Because the total of the two tentative SUI credits is now less than 5.4% of the FUTA wage base, plaintiffs are entitled, on the Government's theory, to an actual SUI credit of the entire $131,318,759. I.R.C. § 3302(c). Given that the IRS has already allowed a credit of $119,041,837.87, the Government's requested relief must provide for an additional SUI credit to plaintiffs of $12,277,021.13. Def.'s Proposed Findings ¶ 16.

The Court has summarized the SUI credit calculations on the chart appended to this Opinion and Order as Appendix A.

### D. *Relief*

The parties agree that even if the FUTA wage base is as high as the Government asserts, an additional SUI credit in the amount of $12,277,021.13 would be due to plaintiffs. If future developments in the litigation cast doubt upon the correctness of the Government's position with respect to the FUTA wage base, then that would affect the calculation of the SUI credit.

As the facts now stand, however, plaintiffs are entitled to an additional SUI credit of $12,277,021.13 and defendant's counterclaim must be reduced by this amount to $31,399,451.04, with a concomitant reduction in the IRS's claimed interest and after accounting for amounts already paid by or collected from plaintiffs. Def.'s Proposed Findings ¶ 17; Def.'s Mem. at 5-6; Plaintiffs' Motion for Partial Summary Judgment at 2 (docket entry 147, June 5, 2009); Status Conf. Tr. at 5-12. The parties agree that calculating interest at this point would be unnecessarily complicated. *See* Def.'s Mem. at 5-6; Pls.' Reply at 2. Because defendant concedes the correctness of the Court's legal analysis and also concedes that its counterclaim must be reduced by $12,277,021.13, the Court will grant plaintiffs' motion for partial summary judgment.

## CONCLUSION

For the reasons stated above, plaintiffs' motion is **GRANTED**, and the Court holds that, even accepting the Government's higher wage base, plaintiffs are entitled to an additional SUI credit of $12,277,021.13, plus interest to be calculated at the conclusion of the litigation, and after taking into account amounts already paid by or collected from plaintiffs.

**IT IS SO ORDERED.**

                                                             /s George W. Miller
                                                      GEORGE W. MILLER
                                                           Judge

**Appendix: SUI Credit Calculations**

|  | **Pre-2001 IRS Assessment** | **Post-2001 IRS Assessment** |
|---|---|---|
| **Total FUTA Wage Base** | $2,204,504,216.68 | $2,908,995,085.26 |
| **§ 3302(a) Credit** | $94,377,832.00 | $94,377,832.00 |
| **§ 3302(b) Credit** | $36,940,927.00 | $36,940,927.00 |
| **Total Tentative Credits (§ 3302(a) credit plus § 3302(b) credit)** | $131,318,759.00 | $131,318,759.00 |
| **Maximum SUI Credit (5.4% of FUTA Wage Base)** | $119,043,227.70 | $157,085,734.60 |
| **Plaintiffs' Actual SUI Credit Entitlement** | $119,043,227.70 | $131,318,759.00 |
| **Unused Tentative Credit due to § 3302(c) Cap** | $12,275,531.30 | N/A |
| **Actual SUI Credit Allowed by IRS** |  | $119,041,737.87 |
| **Plaintiffs' Additional SUI Credit Entitlement** |  | $12,277,021.13 |