UNITED STATES
COURT OF FEDERAL CLAIMS

---

CENCAST SERVICES, LP,              )
                                   )
              Plaintiff,           )
                                   )
v.                                 ) Docket No. 02-1916T
                                   )
UNITED STATES,                     )
                                   )
              Defendant.           )


<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the U.S. Court of Federal Claims to Heritage Reporting Corporation on December 22, 2009.)


Pages:  1 through 54

Place:  Washington, D.C.

Date:   December 22, 2009

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CENCAST SERVICES, LP,          )
                               )
                 Plaintiff,    )
                               )
v.                             ) Docket No. 02-1916T
                               )
UNITED STATES,                 )
                               )
                 Defendant.    )

                               Tuesday,
                               December 22, 2009

                          <u>Live Tape</u>

        (The following transcript was transcribed from a
digital recording provided by the U.S. Court of Federal
Claims to Heritage Reporting Corporation on December 22,
2009.)


            BEFORE:  HONORABLE GEORGE W. MILLER
                     Judge


            APPEARANCES:  (Via Telephone)

            <u>On Behalf of Plaintiff</u>:

            KENT A. YALOWITZ, Esquire
            AMALIA JORNS, Esquire
            Arnold 7 Porter, LLP
            399 Park Avenue
            New York, New York  10022
            (212) 715-1113

2

APPEARANCES:   (Cont'd)

On Behalf of Defendant:

FREDERICK C. CROMBIE, Esquire
CHRIS DOVE, Esquire
U.S. Department of Justice
Tax Division
P.O. Box 26, Ben Franklin Station
Washington, D.C.  20044
(202) 305-2165

1          P R O C E E D I N G S

2                                    (10:02 a.m.)

3          THE COURT:  We are here in Chambers, that is

4     myself and my law clerk, Lawrence Bluestone.  And the

5     status conference is in the case of Cencast Services,

6     L.P. et al., Plaintiffs, v. United States, Defendant,

7     Docket No. 02-1916T and consolidated cases.

8          And at that point, would counsel please

9     identify themselves for the record?

10          MR. YALOWITZ:  Good morning, Your Honor.

11     It's Kent Yalowitz and Amalia Jorns for the

12     Plaintiffs.

13          THE COURT:  Welcome, and good morning.

14          MR. YALOWITZ:  Thank you.

15          MS. JORNS:  Good morning.

16          MR. CROMBIE:  Good morning, Your Honor.

17     Fred Crombie for Defendant, United States.  With me is

18     my colleague, Chris Dove.  I also have in my office

19     sitting with me a handful of other colleagues who have

20     been involved in some aspects of this case.  If you'd

21     like, I can list off everyone who is here, although

22     Chris and I will be the only two discussing matters

23     with the Court today.

24          THE COURT:  Why don't you just go ahead and

25     identify the others who are on the phone.

1          MR. CROMBIE:  Sure.  I have Shelly Dole,

2     Alison Iskovich, Richard Boles and Starling Marshall,

3     all of whom are other attorneys in the Court of

4     Federal Claims section.

5          THE COURT:  With respect to Starling

6     Marshall, that's a very familiar name to me.

7          MS. MARSHALL:  Yes, Your Honor.  I believe

8     you know my mother from Hogan and Hartson.

9          THE COURT:  Yes, yes.  Let me make a

10    disclosure.  Ms. Marshall's mother, Gail Starling

11    Marshall, was a partner of mine when I was at Hogan

12    and Hartson.  And so obviously I know Starling's

13    mother very well, and if anyone has any objection, let

14    me know, but I don't think it should cause a problem

15    certainly as far as I'm concerned, although, Ms.

16    Marshall, I hold your mother in the highest regard, as

17    I'm sure you know.

18          Mr. Yalowitz, any problem as far as you're

19    concerned?

20          MR. YALOWITZ:  No, sir.  I think that that

21    will not cause any problem as far as Plaintiffs are

22    concerned.

23          THE COURT:  Okay, then let's proceed.

24          The agenda was set forth in an order that we

25    promulgated December 17.  And we thought it might be

1    useful to begin by talking about the status of the

2    parties' discussions regarding the form of

3    questionnaire with respect to the independent

4    contractor issue, specifically whether the parties

5    have had any further discussions about trying to come

6    into agreement on the form of a questionnaire without

7    prejudice to whether in fact we would utilize a

8    questionnaire.  And in that regard, we had asked the

9    parties to file on January 6 either an agreed form of

10   questionnaire or separate proposals.

11        And the reason we did that was because in an

12   earlier round of submissions each side had critiqued

13   the proposals of the other, and frankly, upon

14   reviewing those critiques, the Court thought that some

15   of the suggestions seemed to have a good deal of merit

16   and the Court was hopeful that each side might modify

17   its initial position in light of the critiques of

18   their adversaries.

19        So why don't we start with that, namely any

20   discussions that have been had regarding the form of a

21   questionnaire and what the parties anticipate coming

22   in with on January 6, which is the date when we've

23   asked the parties to file either an agreed form of

24   questionnaire or their respective proposals.

25        Mr. Yalowitz, do you want to start?

1          MR. YALOWITZ:  Sure, I'd be glad to.  The

2     simultaneous nature of the filings created a little

3     bit of a time lag in terms of the iterations versus

4     the critiques, so we received a letter from the

5     Defendant toward the beginning of November and we had

6     a conversation, both the experts and the lawyers, sort

7     of an off-the-record conversation.

8          And based on the letter and based on the

9     conversation, Professor Babin made some improvements

10    to his proposed form, but because of the limited time

11    available, we filed that on the 24th at the same time

12    that the Defendant filed its critiques.  So their

13    suggestions were based on an earlier iteration of the

14    form.

15         Since that time we have consulted further

16    with Professor Babin and he is open to hearing further

17    from the Defendant and its advisors on other

18    improvements that might be made, if any, without

19    prejudice to their legal position that they don't want

20    any form, but we have not had those discussions.

21         And in part, I think the reason we have not

22    had those discussions is because I've been engaged in

23    a trial which ended Thursday night, and so I haven't

24    really driven that process.  And as I said, both we

25    and Professor Babin would be open to a further

1     conversation if Mr. Crombie and Dr. Van Lear think

2     that it would be useful.  If they don't think it would

3     be useful, we may see some further refinements from

4     Professor Babin, but we may not.  I don't have a clear

5     view that he thinks it's necessary or appropriate to

6     make additional changes, but he's certainly not being

7     stiff-necked about it, and if there are additional

8     ideas or suggestions, I know that he would be open to

9     listening to them and reacting.

10          So that's where we are, and I would expect

11     to either have a further declaration from Professor

12     Babin on the 6th explaining what improvements he made

13     to the form and reacting to some of the comments of

14     Dr. Van Lear, or if there's further discussion, then

15     we may be able to come to an agreement, although I get

16     the sense that the Defendant for its own reasons does

17     not want to commit to a form of questionnaire.  Those

18     reasons, they'll have to explain why.

19          But that's just my take-away right now is

20     it's either for institutional reasons or strategic

21     reasons.  Whatever their reasons are, which they don't

22     have to share with me, they don't seem to be inclined

23     to do a joint questionnaire.  And we're very happy to

24     proceed on separate tracks in that regard.

25               THE COURT:  So do I take it from that that

1    you do think that the Plaintiffs will be in a position

2    to make a further submission with respect to the form

3    of questionnaire, taking into account the refinements

4    suggested by the expert, on the 6th of January?

5              MR. YALOWITZ:  Yes.

6              THE COURT:  Good.

7              MR. YALOWITZ:  Yes.  There will either be

8    further refinements or there will be discussion as to

9    the nature of the critique and a response to it on the

10   basis of the scientific literature or scientific

11   standards.

12             THE COURT:  Mr. Crombie, what is your

13   proposal with respect to the filings that we've asked

14   for on January 6?

15             MR. CROMBIE:  Well, as far as what we had

16   intended to file on January 6, it was some refinement

17   to our proposal, although as far as the intended use

18   of any questionnaire and the need for depositions, in

19   our opinion, it's pretty well set and I don't think

20   it's going to change that much.  We may have some

21   changes to the form of questionnaire.  I don't know

22   that we necessarily have a problem with the questions

23   from the Form SS-8 into a piece of paper that does not

24   have the IRS imprimatur on it.  It is certainly not

25   making the threats that Plaintiffs seem to suggest

1    were being made in their last status report.

2           On top of that we'll also provide additional

3    critiques of the Plaintiffs' survey.  Since the time

4    we filed our last status report, we have identified

5    several additional flaws in the Plaintiffs' approach.

6    So we'll address those in the status report as well.

7           As far as the utility in further discussing

8    this with Plaintiffs, I personally don't see the

9    utility in that, and there's two reasons.  The first

10   so far is that while this has been proceeding under

11   the hope that there would be a great deal of

12   cooperation, the flow of information has actually been

13   decidedly one-way.

14          I think if you look at the status report

15   that we filed on November 24 and compare that to the

16   letter that we sent to the Plaintiffs in early

17   November, you'll see that the two of them track pretty

18   closely and that everything that was in our status

19   report, all of our critiques, were disclosed to the

20   Plaintiffs beforehand.  The reverse has not been true.

21          Everything that appeared in the Plaintiffs'

22   status report, the various revisions to the form of

23   questionnaire, their proposal for a two-track survey,

24   their proposal to use a special master and their

25   critiques of the use of the Form SS-8, none of that

1    was discussed with us before the filing of their

2    status report.

3              So while we've taken to heart the Court's

4    request that we be open with our objections to

5    Plaintiffs' proposal, the flow of information has been

6    decidedly one-way and that's leading me to believe

7    that there's really not much use to continuing down

8    this track.

9              And the second point is we're pretty well

10   decided on what we're going to do.  We believe there

11   is some utility to asking a preliminary set of

12   questions that will allow the parties to use

13   inadmissible evidence to identify those workers that

14   may or may not be independent contractors and then to

15   have further discussions with those individuals,

16   whether it's in the context of an interview or a

17   deposition.  I think we're pretty well set in that

18   regard.  That strikes us as something that is in

19   conformity with the way that every other worker

20   classification case has been decided and I don't think

21   our approach is going to change much in that regard.

22             THE COURT:  Let me just interrupt for one

23   second, Mr. Crombie, because I believe that actually

24   we took note of the fact, which I believe is a fact,

25   that the Plaintiffs' position on the form of

1    questionnaire as I understand it was largely, if not

2    entirely, seen for the first time when the

3    simultaneous filings were made.  Am I correct in that

4    regard, Mr. Crombie?

5         MR. CROMBIE:  That's absolutely correct,

6    Your Honor.

7         THE COURT:  Okay.  So then we decided that

8    we would ask, having looked at each side's critiques

9    and really in light of to some degree the fact that

10   the parties had independently come up with their

11   proposals but that there were critiques on both sides

12   that presumably each side would wish to take into

13   account at least to some degree.

14        So the Court is hopeful that the submissions

15   on the 6th will be more, what shall we say, directly,

16   I don't want to say contradicting, but directly engage

17   the merits of the position of the adversary.  And if

18   that is the case, then the Court's view would be that

19   by the further status conference, which I believe we

20   have scheduled for January 20, we should be in a

21   position to deal with the issue whether there should

22   be a questionnaire and, if so, what the form of that

23   questionnaire would be.

24        So the Court is mindful of the need for each

25   party to have an adequate opportunity to evaluate the

1    other party's critiques, and the Court had hoped to

2    build that in with the requirement for the filings

3    that we've indicated on the 6th of January.

4         So, Mr. Crombie, as far as the Court is

5    concerned, there has been no decision made by the

6    Court as to whether a questionnaire will be utilized

7    and, if so, what the form of it will be.  But as the

8    Court indicated in the I think December 3 order which

9    set up the requirements for the January 6 filings, the

10   Court is of the view that it would be very helpful if

11   the government in particular could for this purpose,

12   and recognizing that no decision has been made, but

13   for this purpose assume that a questionnaire is going

14   to be utilized and give us the government's best shot

15   at how that should be done and also obviously in that

16   connection any further critiques of the Plaintiffs'

17   proposal so that by the time we get together on the

18   20th, as I say, the parties will have engaged the

19   contentions of each other and we would be in a

20   position to see the issues perhaps more sharply then

21   than we are in a position to do so when each party

22   files its own proposal and the other side sees it for

23   the first time.  I mean, there's no reason why that

24   can't happen, but it's not an ideal situation.

25         And if it does happen, as it apparently has

```
 1    here, the answer it seems is for the parties to, now
 2    that they have seen the other side's critiques and the
 3    other side's proposal, to make an appropriate
 4    response.  And I gather that's what the Plaintiffs are
 5    working toward doing, and the Court would hope that
 6    the government would do likewise, recognizing that
 7    this would be without prejudice to the government's
 8    position on whether a questionnaire would be desirable
 9    or appropriate or not.
10          So that is the Court's view with respect to
11    the concern about information sharing, and I hope that
12    that would ameliorate that issue.  Now it seems to me
13    that it might be useful for just a minute to talk
14    about, and I would be interested in hearing I think
15    first from the Plaintiffs, the earlier filings I think
16    revealed some discrepancies about how the parties
17    contemplated using the questionnaire, assuming a
18    questionnaire were served.
19          And it wasn't altogether clear to the Court
20    whether the Plaintiffs were saying that they
21    anticipated introducing in evidence the actual
22    completed questionnaires or something else, and I
23    guess one possibility on that subject would be that
24    one, that the Plaintiffs would ask their expert
25    witness to review the responses to the questionnaire
```

1    and then give expert testimony with respect to the

2    applicability of the responses to the larger question,

3    that is to say whether the sample is actually useful

4    and appropriate in making generalized conclusions

5    about the universe of production workers.

6         I may have misunderstood the Plaintiffs'

7    position, but it would be helpful I think in terms of

8    looking at the underlying question, whether there

9    should be a questionnaire here, to hear a little bit

10   from the Plaintiffs about how they would contemplate

11   actually utilizing the responses that would presumably

12   be received in response to the questionnaire.  Mr.

13   Yalowitz, can you address yourself to that?

14        MR. YALOWITZ:  Yes.  In order to do that, I

15   think it would be helpful to talk a little bit about

16   how we got here, what we had in mind over the summer,

17   what happened after that and what we now propose.

18        And in that regard, it's certainly not my

19   intention to point fingers, but I don't think that the

20   Defendant's comment about information flow being one

21   way was a fair comment.

22        THE COURT:  Let me stop you right there, Mr.

23   Yalowitz.  I think counsel on both sides know the

24   Court's views on pointing fingers and they are

25   decidedly unfavorable.  So, if we could pass over in

1   silence for the moment whether the flow of information

2   has been one way or two ways or something else, let's

3   do that.  Let's see if we can keep our focus on how we

4   think we should proceed here.

5          MR. YALOWITZ:  Yes.  Okay.  Agreed, and my

6   silence is not taken as a concession or agreement or

7   acquiescence in the comment.

8          THE COURT:  Understood.

9          MR. YALOWITZ:  Okay.  Good.  Now, over the

10  summer when we conceived of the idea of a

11  questionnaire, it seems to me that there would be two

12  potential uses for a questionnaire.  Use number one

13  would be that the worker could fill out the

14  questionnaire and sign a declaration at the end under

15  penalty of perjury and it would effectively function

16  as an affidavit or a declaration under whatever that

17  section of the, 28 U.S.C. § 1746 or something like

18  that.

19         THE COURT:  Right, right.  That's the one.

20         MR. YALOWITZ:  And along with documents, one

21  could build like a little file on each sampled worker,

22  and then either the parties could agree that the

23  worker, based on the undisputable fact that the worker

24  was an independent contractor or the worker was an

25  employee or the parties would agree that based on the

1    facts as they knew them, they needed some neutral

2    person such as the Court to make a judgment as to

3    which category the worker fell into for the particular

4    samples in that.

5         THE COURT:  Mr. Yalowitz, could I interrupt

6    for just a second right there?

7         MR. YALOWITZ:  Yes.

8         THE COURT:  That sounds to me as though the

9    Plaintiffs actually contemplate the introduction into

10   evidence of the affidavit to which you refer.  Is that

11   correct?

12        MR. YALOWITZ:  That was the initial idea,

13   and that is exactly correct, that sitting there in

14   August that was my hope and expectation.

15        At the same time, it seems to me that having

16   a standardized questionnaire designed by an expert in

17   the survey field, those questionnaires could be

18   evaluated using scientific principles on an aggregate

19   basis, and an aggregate conclusion could be drawn that

20   would be complementary to the sort of person by person

21   analysis that the lawyers might undertake.

22        And the way one might do that is with a

23   scoring, what's called a scoring methodology.  So you

24   may have seen these, "Are you heart healthy?", you

25   know, and you take a little survey, do you eat enough

1    oat bran and things like that, and for each question a
2    number of points are assigned depending on the answer,
3    and then you can draw aggregate conclusions based on
4    the total scoring, the scoring of the answers in the
5    aggregate.  That I have learned is a common technique
6    for evaluating large groups of data.

7         So that was another thing that could be done
8    with the answers to the sampled questions and a
9    different thing and a thing that was complementary to
10   the affidavit technique that I just mentioned.

11        And the problem with that, doing both
12   things, one problem with that that the Defendant
13   pointed out early in our process and I think validly
14   pointed out is that in traditional survey methodology
15   a promise of anonymity is very important because it
16   tends to allow people to give and encourage people to
17   give more reliable, truthful answers rather than
18   answers in which they're thinking well, how will this
19   appear, what will the person do with the information,
20   what does the recipient want to hear.  You know, these
21   are called demand characteristics.

22        So, as we were thinking about this issue, we
23   were thinking, well, we were thinking we would like to
24   hear from the Defendant what ideas they might have for
25   addressing this problem, and we did not hear anything

1    from Defendant in that regard even after we got their

2    letter in, whatever it was, November 10, or had our

3    conversation with them on November 16.  So our

4    thinking evolved, especially in response to that

5    conversation, that what we should do is separate those

6    two functions.  And so we can and should use a single

7    questionnaire, but we should deploy it in two

8    different ways.

9         The first way, which was the original

10   conception, is to ask somebody to fill it out under

11   oath and it would be admissible at least in the

12   summary judgment context so that we could make

13   individualized judgments about individual workers to

14   the extent there is sufficient information.

15        And the second way is to draw a separate

16   sample, not the same individuals, but a separate

17   sample of workers, and we're fortunate in that we've

18   got a sample right now of I think 379 out of 350,000,

19   so it will not be difficult to find an additional 400

20   or so, and draw that sample and deploy the

21   questionnaire in a traditional way, with a promise of

22   anonymity, guided exclusively by the experts.

23        The individualized survey responses would

24   not be admitted for the truth of their content.  The

25   conclusions to be drawn from them would be drawn by

1    the expert, by Dr. Babin, based on his experience and

2    expertise, and then his testimony about his

3    conclusions based on the survey work that he designed

4    and deployed would be admissible to the Court as

5    evidence that would lead to some quantification of the

6    incidence of independent contractors.

7              THE COURT:  You mean the testimony of the

8    expert?

9              MR. YALOWITZ:  Correct.

10             THE COURT:  Right.

11             MR. YALOWITZ:  And obviously the results of

12   the survey would be available to the Defendant to

13   examine.

14             THE COURT:  Because the questionnaire

15   responses would be materials upon which the expert

16   would have relied and presumably he would give

17   testimony to the effect that it is a recognized

18   practice in his field of expertise to rely upon such,

19   what shall we say, responses which could be argued

20   have a certain hearsay quality about them.  But the

21   expert is of course entitled to rely upon them.

22             MR. YALOWITZ:  Yes, that's exactly right.

23             You know, I think Rule 705 deals with, Rule

24   705 or somewhere in the 7 series of the Rules of

25   Evidence there is the ability to get these kinds of

1    things before the Court to the extent that they're

2    useful and important.  But my idea of this second

3    tranche of survey responses would not be that we would

4    then have individualized findings about who was or was

5    not an independent contractor but rather that these

6    would be evaluated, you know, the results of the

7    survey would be evaluated as part of an expert's work.

8         And the information would be available

9    because it has to be something turned over and relied

10   upon, and to the extent that there were disputes or

11   questions about the data or the conclusions drawn, the

12   data wouldn't be secret, but we wouldn't be having

13   individualized disputes on what did Joe Smith say or

14   why did he say it or what was his recall.  It would

15   just be here's the data and the experts can draw

16   whatever inferences experts draw about sets of data

17   like this one.

18        But that would be separate from the project,

19   the initial project which we're now engaged in, which

20   is get a bunch of documents to the extent they're

21   available and ask the individuals a series of

22   questions in some kind of a form that could be

23   admitted in evidence on a person-by-person basis.

24        THE COURT:  Mr. Crombie, if I understand the

25   government's position, it is that as far as sending a

1   questionnaire, assuming that we decide to do that, the

2   government's position seems to be once the responses

3   are in that the Plaintiffs would designate the

4   individuals whose responses at least prima facie

5   suggest that they are independent contractors.  And

6   once those individuals are identified the government

7   would then consider whether it wished to take the

8   depositions of those individuals, presumably with a

9   view toward showing that notwithstanding the responses

10  to the questionnaire, upon further questioning of the

11  individual, one would conclude perhaps that this

12  individual was in fact not an independent contractor.

13          Is that a fair statement of what the

14  government suggests we should do here?

15          MR. CROMBIE:  I think so, Your Honor, and

16  that flows from two basic points.  One, the Plaintiffs

17  have made this claim that some subset of workers may

18  in fact be independent contractors.  The problem we

19  have is that that claim remains largely unfocused in

20  the sense that they have sampled a group of employees,

21  their basic theory seems to indicate a belief that

22  some significant portion of those workers are in fact

23  employees and not independent contractors.

24          And so, in keeping with their burden of

25  proof, and that burden is both to come forward with a

1     reasonably focused claim and to actually demonstrate

2     that they're entitled to, I guess in this case it

3     would be a reduction of the assessments.  They have to

4     actually come forward and identify those workers they

5     contend are independent contractors.  And we believe

6     that the use of the survey -- or I shouldn't say

7     survey, the use of a questionnaire can allow them to

8     make a more focused claim.

9           Now that questionnaire would be along the

10    lines of, to use discovery terms, information likely

11    to lead to the discovery of admissible evidence.  We

12    don't believe the questionnaire itself would be

13    admissible, but the information could be used by the

14    Court, by the parties, on an informal basis to assist

15    Plaintiffs in making a more focused claim and thereby

16    assist in the more efficient conduct of discovery in

17    the means of depositions of production workers.

18          The second basic point that our proposed

19    procedure flows out of is the fact that worker

20    classification decisions are recognized by courts and

21    by Congress and by the IRS as a highly fact-intensive

22    analysis.  And if you look at the cases involving

23    worker classification decisions, we've been unable to

24    find a single case where a questionnaire or a survey

25    was used to classify a worker as either an employee or

1       an independent contractor.

2               And the reason for that is simple, which is

3       that it is a highly contextual analysis.  It's not one

4       that's subject to 50 simple questions of say yes or no

5       or indicate whether you're hot or cold on this

6       statement of fact versus that statement of fact.  You

7       have to actually get in there, talk to the worker,

8       understand what he actually did, then understand how

9       he interacted with the entities that he provided

10      services to.  And the only way you're going to do that

11      is to actually talk to the person, understand the

12      nature of what he did and how he interacted with his

13      employer or contractor.

14              So that's our basic approach.  We think

15      there is utility to using a questionnaire that will

16      allow the parties to be more focused in the conduct of

17      discovery but that ultimately you can't classify a

18      worker without talking to him or her.

19              THE COURT:  So one thought that occurs to

20      the Court in response to that statement is, and I am

21      definitely of an open mind on the subject, but query

22      whether one couldn't take the position that the

23      Plaintiffs have adequately carried their burden to

24      show prima facie that a particular respondent is more

25      likely than not an independent contractor.  Then the

1    Defendant would be entitled to probe the basis for

2    that and if it is the case show that there are many

3    additional factual contextual elements that would have

4    to be taken into account before one could properly

5    make that determination, which would seem to the Court

6    to be in the nature of grist for cross-examination of

7    the Plaintiffs' expert or tendering evidence based on

8    whatever is available in discovery, tending to show

9    that the particular individuals are in fact not

10   independent contractors.  And that would tee up the

11   issue for the Court to resolve.

12          MR. CROMBIE:  Your Honor, that approach

13   would have, if you adopted Plaintiffs' approach with

14   that understanding, the effect is that you would have

15   limited the Defendant's ability to defend its counter-

16   claim simply by arguing that the Plaintiffs have not

17   met their burden of proof.

18          We are firmly in the camp that the

19   questionnaire process is inadequate to determine

20   whether a worker is an independent contractor or an

21   employee.  If you adopt Plaintiffs' approach you are

22   in essence -- and remember Plaintiffs' approach is to

23   tell these people to the extent they fill out a

24   questionnaire they will not be deposed.  So following

25   Plaintiffs' approach cuts off our right to depose

1    these workers and cripples our ability to make our own

2    affirmative case on our own independent theory from

3    Plaintiffs.

4         THE COURT:  Well, let me suggest that

5    there's a lot here to talk about that we haven't

6    probably adequately addressed or at least the Court

7    has not adequately addressed.  And according to the

8    present schedule we're going to get back together

9    again on the 20th of January.  It might make sense for

10   the parties to make some further submissions in

11   advance of the status conference on the 20th, and the

12   Court would feel hopefully more comfortable at that

13   point dealing with the alternative approaches that the

14   parties have suggested.

15        I would say one thing.  Mr. Yalowitz, I'm

16   not sure I fully followed the sort of dual, what I

17   understood to be dual questionnaire approach here.

18   And it would be helpful to the Court to see that

19   spelled out I think a little more precisely before

20   making a decision on how to proceed.

21        We've got a filing coming up on the 6th.  I

22   don't know if that gives the Plaintiffs adequate time

23   or not.  If it did not, we could push that back and

24   then maybe get a reply or an opposition from the

25   Defendant in advance of the January 20 status

1  conference and hopefully make some rulings at that

2  point.

3       MR. YALOWITZ:  Yes, I'll tell you what would

4  be helpful to us.  I've been thinking about the burden

5  of proof question a little bit, and I don't think it's

6  as important as the Defendant seems to, but I do think

7  it's something that we ought to address in a paper

8  just so our views about the burden of proof are clear,

9  and I think that that will be helpful as a stage for

10  explaining the two different sampling, two separate

11  tracks of sampling that we have in mind.

12       It would be helpful to me and I think

13  helpful to the Court to see in writing the additional

14  suggestions or criticisms that Mr. Crombie has

15  mentioned.  I'm happy to receive those in the form of

16  a letter or whatever.  I don't really care about the

17  form, but it would be useful for us to have those

18  maybe 10 days before we file a paper so that we can

19  give the Court the best questionnaire reflecting

20  whatever thoughts the Defendant has, and maybe we can

21  do something where they file on the 6th and we file on

22  the 16th or something like that.  I'm just throwing it

23  out there.  I don't want to put a monkey wrench into

24  anybody's holiday plans, so that's why I'm suggesting

25  maybe the 6th and the 16th.  I don't even know if it's

1    a weekday.

2             THE COURT:  I think it is.

3             MR. YALOWITZ:  The 16th is a Saturday, but

4    we could do the 15th, you know, the 6th and the 15th.

5             MR. CROMBIE:  Your Honor, if I may interject

6    here?

7             THE COURT:  Well, let me before we get to

8    the substance, the dates, once again, Mr. Yalowitz,

9    that you were referring to, let me have them.

10            MR. YALOWITZ:  That we get a paper from the

11   Defendant with regard to the questionnaire process on

12   the 6th of January, and then we file something with

13   the Court that takes into account all the information

14   we've received from Defendant by January 15, and then

15   we have our conference on Wednesday, the 20th.

16            THE COURT:  Mr. Crombie?

17            MR. CROMBIE:  Yes, I wanted to interject

18   because I actually have my own scheduling concerns.

19   As Your Honor knows, we have the date of January 13

20   for filing our motion for summary judgment.

21            THE COURT:  Yes, I wanted to get to that,

22   but go ahead.

23            MR. CROMBIE:  We're proceeding along that

24   line and we intend to get it into the Court on the

25   13th.  We have six attorneys assigned to this case,

1    but we are juggling a lot of balls in the sense that

2    we're trying to get this motion for summary judgment

3    done, we are meeting and conferring with a significant

4    number of third parties with respect to discovery.

5    We've also got the intervening holidays.  And with all

6    those balls in the air, realistically we're not going

7    to be able to get a response to the status report in

8    on the 6th.

9              I was actually going to make a suggestion or

10   a request I should say that we'll get our motion in on

11   January 13.  What I'd like to do is respond to the

12   Plaintiffs' status report on the 20th, which basically

13   gives me a week from when we get our motion for

14   summary judgment in to then turn to exercising my

15   supervisory abilities to get the response to the

16   status report in.  Get that in on the 20th and then

17   have a status conference on the 25th.

18             Honestly, Your Honor, even with six

19   attorneys, there's just no way we can get this all

20   done by the schedule as it stands right now.  That's

21   my larger concern.

22             THE COURT:  Well, let me respond just

23   briefly.  That is I do think the focus on the deadline

24   for the government's motion for summary judgment which

25   is January 13, 2010, is a date which should be

1     inviolate at this point.  And if it were necessary in

2     order to permit the government to adequately respond

3     to the critiques of its proposal with respect to the

4     questionnaire, that would not be as far as the Court

5     is concerned the end of the world.  And presumably

6     there would be a similar extension of the January 6

7     deadline that would be applicable to the Plaintiffs.

8             Let's spend just a minute on the fact that

9     the January 13 deadline, Mr. Crombie, I think you were

10    asking basically for a week after that, which would

11    take us to the 20th.  Yes.

12            MR. CROMBIE:  For the response to the status

13    report, Your Honor, yes.

14            THE COURT:  Right.  And then put the status

15    conference off until Monday, the 25th?

16            MR. CROMBIE:  Yes.  The only complication

17    for the 25th for me, Your Honor, is that I have a

18    pretrial conference scheduled in another matter for

19    the 25th but not scheduled for anytime in particular

20    yet.

21            THE COURT:  How about moving it to the 26th

22    then?

23            MR. CROMBIE:  I'm certainly free that day.

24    I'd also be happy to do it on the 25th if we can just

25    be a little bit flexible on the time.

1          THE COURT:  Unless the Plaintiffs have a

2     problem, why don't we plan on putting the status

3     conference over until Tuesday, the 26th of January at

4     10:00, and we'll do it in person.

5          MR. YALOWITZ:  So, Your Honor, I totally

6     concur in giving Mr. Crombie and his staff some relief

7     on the response to the status report.  If they want

8     until the 20th, we have no problem with that

9     whatsoever.

10          In terms of the week of the 25th, that's

11     fine.  My only issue is I heard Mr. Crombie say they

12     have some new ideas that they've already formulated

13     about the problems that they perceive with the

14     instrument that we filed with the Court on

15     November 24.  And if we could get a date in which they

16     provide a letter to us just explaining the substance

17     of those thoughts, that will give us the opportunity

18     to get a better document before the Court on the 20th.

19          MR. CROMBIE:  Your Honor, it's Mr. Crombie.

20     Whether we have an obligation to file something with

21     the Court on January 6 or an earlier date by which to

22     provide a letter to Plaintiffs explaining what would

23     otherwise be in our status report, it's the same

24     burden on us.

25          At some point, if the Plaintiffs are going

Heritage Reporting Corporation
(202) 628-4888

1     to put together a proposal for a questionnaire and

2     survey process, at some point, they just have to stand

3     behind it.  This continuing going back and forth about

4     us perfecting their proposals, it's just prolonging

5     the process.  They can get something on file, we'll

6     put something on file, and we'll explain why this

7     whole procedure just doesn't work.

8              THE COURT:  Well, yes.  Let me just say the

9     Court is not persuaded that the back-and-forth

10    methodology is only prolonging the agony.  It is

11    certainly helpful to the Court to have the parties

12    discuss as we had contemplated with the January 6

13    filing.  It would certainly be helpful to the Court to

14    have the parties respond to the critiques of their

15    adversary and, recognizing that this is without

16    prejudice to what we're going to do, to the maximum

17    extent possible exchange the critiques.  And it

18    doesn't have to be a filing.  It would be perfectly

19    appropriate to do it in a letter, but I think contrary

20    perhaps to what I'm hearing from the government, the

21    Court is of the view that the critique and response

22    and further critique and response process, obviously

23    it won't go on forever, but is and would be quite

24    beneficial as far as the Court is concerned.

25              And so for that reason the Court would like

1    to see the January 6 responses to critiques and hope

2    that the parties can accomplish that at the same time

3    that they are doing the other things that they need to

4    do in connection with the motion for summary judgment.

5         Can that be done, Mr. Crombie, do you think?

6         MR. CROMBIE:  I'm sorry, on the January 20

7    date, Your Honor?

8         THE COURT:  Yes.  We're going to have a

9    status conference on the 20th, and in advance of that

10   the Court would like to see the kind of critique and

11   response that we had previously indicated we expected

12   the parties to file on the 6th.

13        MR. CROMBIE:  I'm sorry, Your Honor.  As I

14   understood it, I thought we were moving the responses

15   to the status report to the 20th and then having the

16   status conference on the 26th.

17        THE COURT:  Yes.

18        MR. CROMBIE:  So that's the procedure for

19   going forward.  We can certainly keep those dates,

20   yes.

21        THE COURT:  Okay.  Let's --

22        MR. YALOWITZ:  Your Honor?

23        THE COURT:  Yes, Mr. Yalowitz, go ahead.

24        MR. YALOWITZ:  Yes.  What I'm thinking is

25   the filings on the 20th would be much more useful if

    1    the parties exchanged in good faith a pair of letters

    2    10 days in advance of that in which they said we have

    3    reviewed the thing that you filed on November 24 and

    4    here is our problem with it.  And that way we would

    5    have time to consult with Professor Babin, the

    6    Defendant would have time to consult with Dr. Van

    7    Lear, and then the filings on the 20th would be far

    8    more meaningful.

    9              MR. CROMBIE:  Your Honor, the problem with

   10    that --

   11              THE COURT:  Wait, wait, wait.

   12              MR. YALOWITZ:  Let me just finish what I'm

   13    saying.

   14              THE COURT:  Yes, one person speaking at a

   15    time.  Mr. Yalowitz, go ahead.

   16              MR. YALOWITZ:  Thank you.  What I was going

   17    to say is, from the Plaintiffs' perspective, if the

   18    Defendant, because of the filing of the anticipated

   19    motion for summary judgment, if the Defendant needs

   20    some extra time built into the schedule for that

   21    process, we have no objection to it.  There's nothing

   22    magical about having the filings on the 20th instead

   23    of say on the 29th or something.  I just think it

   24    would be useful to have that iterative process take

   25    place before the parties come to the Court with the

1    next round of proposals.

2              THE COURT:  Let me make a suggestion, Mr.

3    Yalowitz.  What about the schedule as follows?

4    January 20, the government files its critique and

5    refined questionnaire proposal.  The Plaintiff

6    responds on January 27.  And we put the status

7    conference into the first week in February.

8              MR. YALOWITZ:  That would be fine with the

9    Plaintiffs.

10             MR. CROMBIE:  Your Honor, Fred Crombie here.

11             THE COURT:  Yes.

12             MR. CROMBIE:  I'd just like to work in a

13   chance to file something on what will then be the

14   Plaintiffs' third iteration of their questionnaire on

15   the 27th.  So, if we can maybe get three days to

16   evaluate what changes they've made and provide some

17   comments, that would probably be useful for the Court

18   in any status conference that we have.

19             THE COURT:  I think that probably would be

20   useful.  Let's see.  January 27 is a, bear with me

21   just a second, a Wednesday.  How about the following

22   Monday?

23             MR. CROMBIE:  Let me just try to open up my

24   calendar here, Your Honor.  One second.

25             THE COURT:  Or later in that week?

1          MR. CROMBIE:  So that starts running into a

2    problem for me.  I have a trial scheduled for

3    February 2 and 3rd.  And so that whole, or I shouldn't

4    say whole, but when you get past the 27th, when you're

5    on the 28th and the 29th and the 1st and that weekend,

6    I'm going to be preparing for my trial that's on the

7    2nd and 3rd.

8          THE COURT:  What if we put it over to

9    Monday, the 8th of February?

10         MR. CROMBIE:  That would work for me, Your

11   Honor.

12         THE COURT:  Then we would schedule the

13   status conference say on Friday, the 12th of February.

14         MR. CROMBIE:  Well, let's see.  That should

15   work for me.  I am out of town that whole next week,

16   so if for some reason --

17         THE COURT:  You mean the week of the 15th?

18         MR. CROMBIE:  The week of the 15th, Your

19   Honor.

20         THE COURT:  Okay, Mr. Yalowitz, how does

21   that set with you?

22         MR. YALOWITZ:  That looks fine with one

23   caveat, which is that I have promised that I would

24   testify in a trial that is scheduled to begin

25   February 8 in Oklahoma City.  I don't know which day

1    I'm going to be called.  I'm part of the defendant's

2    case.  And so as long as we have some ability to sort

3    of be flexible because of that commitment I've made,

4    the 12th is certainly fine with me.

5         THE COURT:  Well, why don't we pencil in the

6    12th for the status conference.  And if it turns out

7    that your testimony conflicts with that, we can

8    reschedule at that point.

9         MR. CROMBIE:  Your Honor, this is Fred

10   Crombie.  I'm certainly flexible on the date of the

11   12th, and I can certainly move it forward if we needed

12   to, but I am out of the country that week of the 15th.

13        THE COURT:  Okay.  Well, let's abide the

14   event and see how Mr. Yalowitz's obligation plays out.

15        MR. YALOWITZ:  If it turns out that it looks

16   like I'm going on the 12th, we might be able to do the

17   10th or something like that.

18        THE COURT:  All right.  Could we move then

19   to the second item on the agenda as far as the Court

20   was concerned?  I think we've probably actually

21   covered this to some degree, but that is the status of

22   the government's anticipated motion for summary

23   judgment on estoppel and variance grounds presently

24   due January 13, 2010.  And it looks like that date

25   remains set.

1          MR. CROMBIE:  Yes, Your Honor.  We'd
2    certainly like to keep that date.

3          THE COURT:  So would the Court.

4          MR. CROMBIE:  Yes.  And we're working to get
5    our motion done in that time.  One of the things with
6    summary judgment motions, there's going to be a lot of
7    exhibits with respect to this motion, and so as far as
8    collecting and organizing exhibits, if we don't have
9    the brief finalized at least a week beforehand, we may
10   have to request a day or two to get exhibits organized
11   and filed.  But I'm certainly hoping to do whatever I
12   can do to avoid that happening.

13         THE COURT:  Great.  Now let me move to the
14   sort of subquestion under item two, and that is the
15   status of discovery relating to the motion.  From what
16   I'm hearing from counsel, it appears that that subject
17   is not a bone of contention at this point?

18         MR. CROMBIE:  I'm sorry?

19         THE COURT:  Discovery looking toward the
20   filing of the summary judgment motion.

21         MR. CROMBIE:  Right.  We've gotten a
22   schedule in place with respect to that.

23         THE COURT:  Good.

24         MR. CROMBIE:  We don't have any additional
25   concerns.

1          THE COURT:  Okay.  Good.  Let me move to the

2     third item on the agenda.

3          MR. YALOWITZ:  Your Honor, before we leave

4     item two?

5          THE COURT:  Sure.

6          MR. YALOWITZ:  I noticed that your order

7     reminded me that you had reserved the question of

8     privilege.

9          THE COURT:  Yes.

10          MR. YALOWITZ:  And we had also sort of

11     mutually reserved the question of whether any

12     additional discovery is going to be useful or

13     appropriate in responding to the motion.

14          THE COURT:  Right.

15          MR. YALOWITZ:  And it occurs to me, first of

16     all, I hate to go a full month without seeing you and

17     Mr. Crombie, and it occurs to me that we have a date

18     reserved on our calendars of January 20, and maybe we

19     ought to hold that date so that we can talk about,

20     number one, will it be appropriate at that time to

21     take up the privilege issue.  Number two, we'll have

22     seen the motion and we can have some kind of an

23     intelligent conversation about whether we feel it is

24     necessary for there to be additional discovery in

25     response to it.  And if we, and that's a big if, we

1   feel that it is necessary, what the Defendant has to
2   say about it, which I suspect they would not be
3   inclined to be in favor of additional discovery in
4   response to the motion, that would be a conversation
5   we could have with an actual motion rather than sort
6   of an aspect of the motion.

7         THE COURT:  I think that is actually
8   consistent with our earlier discussions as to any
9   discovery that the Plaintiffs might take the position
10  that they would need to undertake.  And yes, I think
11  it is also the case that we have deferred a ruling on
12  the privilege claims with respect to the documents
13  that have been reviewed in camera, because one of the
14  issues is whether given the nature of the arguments
15  made in the government's motion there is a credible
16  argument that the attorney/client privilege has been
17  waived, and the time to determine that is when we see
18  the government's motion for summary judgment.  So I
19  think as far as keeping the date on the 20th goes,
20  that has a lot to be said for it.

21        Mr. Crombie, what do you think?
22        MR. CROMBIE:  I'm not opposed to having a
23  status conference after we file our motion for summary
24  judgment.  The 20th could be difficult because we just
25  changed the filing date for Defendant's response to

1    Plaintiffs' status report to that date.  So being at

2    the Court for a status conference and filing a

3    document on that date could be difficult.  Maybe if we

4    moved it one day, to the 21st, that would probably be

5    a little bit easier.

6           THE COURT:  The 21st is fine as far as the

7    Court's concerned.  Mr. Yalowitz, any problems with

8    that?

9           MR. YALOWITZ:  No problem.

10          THE COURT:  All right.  Let's schedule a

11   status conference for the 21st at 10:00 in person.

12          Now I wanted to move if there are no further

13   matters to be discussed to the third item on the

14   agenda, and that is the Court is interested in hearing

15   from the parties with respect to the responses they

16   have received to the joint subpoenas and whether we

17   have found a way to adequately respond to any

18   questions that the recipients might have.  Are either

19   of you gentlemen in a position to report on that?

20          MR. YALOWITZ:  Your Honor, I think the

21   answer to that question is quite literally no.  From

22   our side, Ms. Jorns has been leading that effort and I

23   would want her to lead the discussion, and I suspect

24   that Mr. Crombie is in the same situation I am.

25          THE COURT:  Ms. Jorns, what is the status of

1     the responses to the joint subpoenas?

2            MS. JORNS:  Your Honor, since we prepared

3     and served the subpoenas in late October, I think

4     we've made very, very good progress in working with

5     everyone to get the documents we need.  As you know,

6     we identified 29 productions that we wanted further

7     discovery on.  The Defendant's expert identified 10

8     productions related to the activation issue, and our

9     experts identified 19 productions related to the

10    production worker issue.

11           The parties were able to identify 53

12    entities that we believe might have documents related

13    to production under the subpoenas that we served in

14    late October.  We've been successful in making contact

15    with individuals who represent 27 of those 29

16    productions.  We are still working on identifying the

17    top recipient for the remaining two, but it has been

18    good progress.

19           You had asked in your order what we had done

20    in terms of developing joint responses to the subpoena

21    recipients, and we've been able to identify some

22    studies that are of course responsive, including on

23    dates for extension or requests for the list of

24    production workers.  But we've worked out a protocol

25    that seems to have been working very well where when

1   it comes to questions as to the subpoenas or the

2   documents from the subpoenas, we've been doing joint

3   meetings with both parties and the third party

4   recipients.  So since we served the subpoenas, we had

5   six joint meet-and-confers that represent 15 of the 27

6   productions in which we've been able to make contact

7   with the recipients.

8        We also have another call scheduled for

9   later this afternoon and that will represent an

10  additional four of the productions.

11       In terms of the kinds of responses we've

12  been receiving from the subpoena recipients, it's not

13  surprising that it's been very varied.  Different

14  networks and studios have their documents in different

15  places.  They've judged their productions differently.

16       But just to give you two examples, for

17  example, one subpoena recipient has offered to let us

18  come out to LA and sit in a room and go through 65

19  boxes of documents representing two productions.

20  Another recipient at another studio has informed us

21  that for two of the productions related to the

22  aggregation issue, there was no separate entity aside

23  from the studio for the production on those particular

24  productions.  And at least from Plaintiff's

25  perspective that would seem to resolve the issue of

1    who the employer was as there is no separate

2    production entity.

3            And just overall, we've had a number of

4    recipients that have agreed to produce certain

5    nonresponsive documents.  We've reached individual

6    agreements with a number of recipients for certain

7    categories of documents that they will produce in the

8    first instance.

9            Overall it's been a very large undertaking.

10   We are working through it.  I'm optimistic that we're

11   going to be able to obtain responsive documents.

12   There are two or three discrete issues that I wanted

13   to raise with the Court, and I can talk about those

14   unless Your Honor had other questions as far as the

15   overall status of our discussions.

16           THE COURT:  No, I think you've covered the

17   overall status very thoroughly, and maybe we ought to

18   let Mr. Crombie jump in here and see if he has any

19   comments on the overview that we've just heard from

20   Ms. Jorns.

21           MR. CROMBIE:  Yes, Your Honor.  Actually

22   Chris Dove is going to address this point.

23           THE COURT:  Okay.

24           MR. DOVE:  Your Honor, this is Chris Dove.

25           I guess I would begin by saying that we

1      believe that the parties have been working together in

2      response to the recipients very well, and we certainly

3      appreciate Ms. Jorns' efforts on this behalf.  I think

4      we are maybe not as optimistic about the responses

5      we've been getting, and I'll further explain some of

6      those reasons.  As Ms. Jorns pointed out, there are a

7      couple of subpoena recipients that we haven't been

8      able to locate.  We have certain subpoena recipients

9      that have already told us they don't think they have

10     any documents.

11           In a couple of instances, we seem to have a

12     problem identifying what the production area is.  I

13     mean, the subpoena recipients basically get on the

14     phone with us and tell us they don't know what entity

15     we're talking about, they haven't heard of this entity

16     before.  Some of the subpoena recipients have raised

17     significant concerns with respect to California

18     employee privacy laws and whether they're going to be

19     able to produce documents to us based on potential

20     liability they would have.

21           I would say that at this point there doesn't

22     seem to have, with respect to the employee privacy

23     issue, it doesn't seem to have put their production on

24     hold, but it is an issue that hasn't been resolved and

25     at least in one case the proposal from the subpoena

1    recipient on how to resolve it probably isn't

2    acceptable to either party.  So that's something we

3    need to sort of work on.

4            THE COURT:  Mr. Dove, let me interrupt for

5    just one second on the California privacy law issue if

6    I might.  And obviously I should begin by saying I

7    know nothing about the California statute to which you

8    refer.  However, in dealing with Privacy Act issues,

9    and I'm sure Mr. Crombie is familiar with this, we

10   have from time to time entered orders which authorize

11   the disclosure of information that would otherwise be

12   protected because I believe in the Privacy Act there

13   is a provision that if a court orders the disclosure

14   of certain materials that would otherwise be protected

15   then the disclosure is authorized by law.

16            I have no idea whether there's any analogous

17   California provision, but if there is, the Court would

18   certainly entertain if this is the way you wanted to

19   proceed a motion to make the requisite order of the

20   Court.  As I say, that's a practice which has been

21   used in connection with the federal Privacy Act, and

22   one might wish to consider whether there's a similar

23   avenue of dealing with the California issues.

24            MS. JORNS:  Your Honor, if I may?

25            THE COURT:  Yes.

1          MS. JORNS:  We have been looking at the

2     California privacy issue and just to kind of give you

3     a broad outline, under the California Code of Civil

4     Procedure, there is a requirement that subpoena

5     issuers provide notice to employees to point out what

6     records are being sought before they issue a subpoena.

7     So in spite of the subpoena you would have to have

8     some sort of document showing that that method has

9     been provided.

10          THE COURT:  Yes.

11          MS. JORNS:  We've done some research into

12     that issue and the federal subpoena, and we do not

13     believe that that would apply to this particular

14     subpoena.  However, there is a privacy right and a

15     point of reference that is recognized under the

16     California Constitution.  Based on the research I've

17     done, generally in federal courts when there is a

18     special state law privacy provision, the courts will

19     give some weight to that in considering whether

20     documents should be produced in response to a third

21     party subpoena.  But generally a protective order that

22     offers sufficient protection for those type of records

23     has been enough to overcome that privacy concern.

24          So Your Honor's suggestion of some sort of

25     order that would perhaps apply that protective order

1    to give specific categories of documents brought in

2    the subpoena and order the production of those

3    documents subject to the protective order would be a

4    workable solution in our view.  And Plaintiffs intend

5    to submit a short paper suggesting that in the next

6    week.

7              THE COURT:  Good.  Excellent.

8              MR. DOVE:  And thank you, Your Honor, for

9    the suggestion.  That's potentially a workable

10   solution for us as well.  I just wanted to point out

11   that the answer to this isn't really making either of

12   the parties comfortable, it's making the subpoena

13   recipients comfortable.

14             THE COURT:  Yes.  Right.

15             MR. DOVE:  Hopefully a suggestion like this

16   would alleviate any concerns they have about their

17   potential liability.  So I do appreciate that

18   suggestion.

19             And finally, the last issue I wanted to

20   point out is with respect to the subpoena recipients

21   that we have been able to speak with on the phone,

22   nearly every one of them have pointed out the unfair

23   burden that this subpoena puts them under in that we

24   are asking for a very large number of documents from

25   approximately 15 years ago, and in response to that,

1    we have in nearly every case significantly reduced the

2    scope of the subpoena to a handful of documents with

3    the idea that if we do need to go back and ask for

4    more, we would.  But in these cases the parties, at

5    this time, we don't even know if they do have these

6    documents, but it's sort of an opening round for them

7    to at least begin looking for a smaller subset of

8    documents.

9            And one of the issues that the parties, the

10   subpoena recipients, have raised is with respect to

11   documents that would be, for example, an agreement

12   with the Plaintiffs, they've asked why the Plaintiffs

13   have not produced these documents.

14           And I would point out that the Defendant

15   made the request about the same time that the

16   subpoenas went out, made the request to the Plaintiffs

17   to produce these documents, and Plaintiffs' position

18   at this point is that they're going to wait to delay

19   their production until the third parties have produced

20   documents, which in our mind and probably in the

21   subpoena recipients' mind is an unfair shifting of the

22   discovery burden onto these third parties.

23           So I think that it would actually benefit

24   these subpoena recipients quite a bit if the

25   Plaintiffs were to come forward with the documents, do

1     searches of their own records, come forward with the

2     documents they have, and then that would allow us to

3     further narrow the burden on the third parties of what

4     documents they needed to find in their own records.

5          THE COURT:  Well, it sounds like the parties

6     have worked together quite effectively to deal with

7     the issues raised by the recipients, and the Court is

8     pleased, but as I said before, not surprised to hear

9     that counsel have worked together as effectively as

10    they have.

11         Obviously not everything has gone as one

12    might have hoped, and it sounds like the parties have

13    made adjustments where that seemed to be an

14    appropriate thing to do, such as responding to a

15    recipient's concern by narrowing the subpoena at least

16    for the time being and seeing whether that production

17    is enough or whether there is a case to be made for

18    going back to the same recipient and increasing the

19    burden upon that particular entity.

20         With respect to the issue of sort of who

21    goes first here, Mr. Yalowitz, can you just elaborate

22    on the statements that Mr. Dove has made about some

23    recipients suggesting that the Plaintiffs should go

24    first here?

25         MS. JORNS:  Your Honor, actually this is Ms.

1    Jorns.  I believe I should answer.

2          THE COURT:  Sure, by all means.

3          MS. JORNS:  I did want to point out in

4    response to Mr. Dove's concerns about sort of the

5    responses we've been receiving from subpoena

6    recipients, but we actually have received production

7    of documents already, before production, and a firm

8    commitment from the subpoena recipients, a number of

9    the other subpoena recipients to produce certain

10   categories of documents.  So I do believe that we're

11   making quite a bit of progress on that.

12         On the specific concern about the discovery

13   requests that were served on the Plaintiffs for the

14   same categories of document requests as the subpoena

15   recipients, I don't think that Mr. Dove's

16   characterization of that issue is quite correct.

17         As I stated in our letter to Mr. Crombie a

18   couple of weeks ago, we are currently searching our

19   files for the categories of documents from these

20   subpoenas.  We're very much in the same position that

21   a number of these subpoena recipients are in that

22   these are documents that are kept in storage, that

23   we're looking through I would say in the scope of

24   thousands of documents throughout boxes of documents

25   to find the kinds of documents sought in these

1   subpoenas.  And frankly, only a few categories of the

2   documents from these subpoenas would potentially be in

3   the possession of the Plaintiffs.

4            As I stated to Mr. Crombie and to Mr. Dove,

5   we are trying to work with subpoena recipients to

6   reduce the burden, and when we have received specific

7   requests for types of documents from the subpoena

8   recipients to aid them in conducting their search, we

9   have agreed to produce those documents if we can find

10  them.  So, for example, with the agreements, we have

11  been working around the clock to locate the boxes in

12  which these agreements are located and have agreed to

13  produce those agreements to the subpoena recipients.

14           Actually, as far as I can remember, only one

15  subpoena recipient has specifically raised the issue

16  of whether we also have documents and seems to be

17  satisfied with our responses.  So it's a process where

18  you have subpoenas that ask for so many categories of

19  documents, it makes sense to do this in sort of an

20  iterative process where we're discussing it with the

21  subpoena recipients and trying to address their

22  concerns and also doing the search.  So we're working

23  in good faith to get the right documents, and we're

24  doing that as quickly as we can.

25           THE COURT:  Well, again, that sounds very

1    sensible and a very cooperative and reasonable way to

2    proceed.  And the Court has expressed a view on many

3    occasions that it appreciates the ability of counsel

4    in this case in particular to work effectively to deal

5    among themselves with issues of this nature.  And the

6    reports that the parties have made frankly is quite

7    comforting and pleasing to the Court.  And I think I

8    would be remiss if I didn't commend counsel on both

9    sides for the way that they are dealing with these

10   issues and wish them well in continuing to do so.

11          We also asked in the order that we put out

12   in advance of the status conference whether the

13   parties had any additional agenda items that they

14   thought it would be useful to talk about at this

15   stage, and so before we conclude I would be happy to

16   hear of any additional matters that the parties think

17   we should talk about while we're all here together.

18          (No response.)

19          THE COURT:  If not, then we will sign off

20   and put out an order later today or tomorrow I guess

21   or maybe even after Christmas, but as soon as we can,

22   embodying the schedules that we have discussed today.

23   And we'll put that out just as soon as we can.

24   Obviously, if any of the parties read it and are

25   shocked and appalled that we've gotten some date

1    wrong, by all means, give us a call in chambers and

2    we'll try to get it right.

3           But we do have a recording of the status

4    conference, so if necessary, obviously we can go back

5    and listen to it, and hopefully that will help us get

6    it right.  If there is no other business to come

7    before the house, we'll sign off now and thank counsel

8    once again for their efforts and look forward to

9    working through these matters and making some progress

10   hopefully.  Thank you all very much.

11          MR. YALOWITZ:  Thank you, Your Honor, and

12   thank you, Mr. Crombie.

13          MR. CROMBIE:  Likewise.  Thank you, Your

14   Honor.  Thank you, Mr. Yalowitz.

15          THE COURT:  Bye-bye, ladies and gentlemen.

16          (Whereupon, at 11:24 a.m., the hearing in

17   the above-entitled matter was concluded.)

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

54

CERTIFICATE

DOCKET NO.:  02-1916T

CASE TITLE:  Cencast Services, L.P. v. U.S.

HEARING DATE:  December 22, 2009


        I certify that the foregoing is a true and
correct transcript made to the best of our ability from a
copy of the official electronic digital recording
provided by the United States Court of Federal Claims in
the above-entitled matter.


                        Date:  December 22, 2009


                         Marcia Thurmond

                        Heritage Reporting Corporation
                        Suite 600
                        1220 L Street, N.W.
                        Washington, D.C.  20005-4018