# In the United States Court of Federal Claims

Nos. 02-1916T, 02-1917T, 02-1918T, 02-1919T, 02-1920T,
02-1921T, 02-1922T, 02-1923T, 02-1924T, 02-1925T
(Filed February 2, 2010)
TO BE PUBLISHED

| | |
|---|---|
| CENCAST SERVICES, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Attorney-client privilege; claw back of documents pursuant to RCFC 26(b)(5)(B); attorney-to-client communications; adequacy of privilege log; *in camera* review of documents claimed to be privileged; confidential communication of publicly available information to an attorney to obtain legal advice; uncommunicated attorney notes; Internal Revenue Code § 6103; taxpayer-specific return information |

     Kent A. Yalowitz, Arnold & Porter LLP, New York, N.Y., Attorney of Record for plaintiffs.  Amalia W. Jorns, Arnold & Porter, LLP, New York, N.Y., and James P. Joseph, Arnold & Porter, LLP, Washington, D.C., of counsel.

     Frederick C. Crombie, Attorney of Record for defendant.  Mary M. Abate, Assistant Chief, Steven I. Frahm, Chief, Court of Federal Claims Section, John A. DiCicco, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

     These consolidated tax refund cases are before the Court on plaintiffs' Motion for Determination of Privilege Claim Pursuant to Rule 26(b)(5)(B) of the Rules of the Court of Federal Claims ("RCFC") (docket entry 199, Sept. 22, 2009) ("Pls.' Mot.").  The Court ruled orally on January 28, 2010; this Opinion and Order explains more fully the rationale for the Court's ruling.

I.      **Background**

      This case has a long and complicated history, which is largely unnecessary to recount here.  *See Cencast Servs., L.P. v. United States*, Nos. 02-1916 et al., 2009 WL 3650921 (Fed. Cl. Nov. 2, 2009); *Cencast Servs., L.P. v. United States,* 62 Fed. Cl. 159 (2004).  Only the background information pertinent to the resolution of the pending motion is set forth below.

      Plaintiffs in these cases are entities that provided payroll services to various movie production companies for the compensation of production workers.  *Cencast*, 62 Fed. Cl. at 162.  The underlying dispute involves determining which entities should be treated as the workers' employers for Federal Income Contribution Act ("FICA") and Federal Unemployment Tax Act ("FUTA") purposes.  *Id.* at 159-62.  In 2004, this Court found that, for purposes of both FICA and FUTA, the employer is the production worker's common-law employer.  *Id.* at 183-84.  This Court also found that plaintiffs' control over the workers' pay by itself was not sufficient to demonstrate that they were the workers' employers for FICA or FUTA purposes.  *Id.* at 179.

      Since the Court's 2004 ruling, the parties have been engaged in settlement efforts and, more recently, in discovery regarding identification of the production workers' common-law employers.  On Friday, September 18, 2009, as part of its reply brief in a then-pending motion to compel certain discovery, plaintiffs attached as exhibits two documents they had previously received from the Government during discovery.  *See* Plaintiffs' Reply in Support of Motion for Determination of Privilege Claim and Motion to File Documents under Seal at 1 (docket entry 211, Oct. 14, 2009) ("Pls.' Reply").  Realizing that these documents had been inadvertently produced, counsel for defendant sent plaintiffs a "claw back" letter three days later pursuant to RCFC 26(b)(5)(B), asserting that defendant had inadvertently produced documents subject to the attorney-client privilege.[1]  Pls.' Mot. at Ex. 1.  Plaintiffs filed this motion for determination of

---

[1] RCFC 26(b)(5)(B) provides:

> **Information Produced.**  If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Plaintiffs do not challenge defendant's compliance with the procedural requirements of RCFC 26(b)(5)(B).

      Defendant initially claimed that certain of the documents it sought to "claw back" were subject to the deliberative process privilege, but these claims have since been withdrawn.  *See*

privilege claims on September 22, 2009.  In response, the Court ordered that plaintiffs sequester all documents identified by the Government as privileged and make no use of those documents pending the Court's final determination of the privilege issues.  *See* Order at 2 (docket entry 200, Sept. 23, 2009); *see also* RCFC 26(b)(5)(B).  Plaintiffs subsequently filed a separate motion for leave to file the identified documents under seal for *in camera* review by the Court (docket entry 203, Sept. 29, 2009).

After extensive briefing, the parties have reduced the number of documents at issue to fourteen.  For thirteen of the documents, defendant raises the attorney-client privilege (Documents A through M); with respect to the remaining document, defendant asserts statutory confidentiality under section 6103 of the Internal Revenue Code (Document N).[2]

On October 19, the Court granted plaintiffs' motion for leave to file documents under seal, permitting *in camera* inspection of the fourteen documents, but ordering that the documents be tendered to the Clerk of Court and not filed as part of the record in this case.  *See* Order (docket entry 213).  On October 23, the Court deferred ruling on the motion for determination of privilege pending the Government's filing seeking to preclude plaintiffs from contending that certain production workers were independent contractors (docket entry 218).  Defendant filed its Motion *In Limine* Regarding Plaintiffs' Independent Contractor Theory on January 15, 2010 (docket entry 249) ("Def.'s Mot.").[3]

---

Defendant's Response to Plaintiffs' Privilege Determination Motion ("Def.'s Response") at 3 n.2 (docket entry 208, Oct. 9, 2009).  The two documents that were attached to plaintiffs' September 18, 2009 brief are among those for which defendant has withdrawn its claim of deliberative process privilege.  *See* Notice re Paragraph 4(a) of the September 23, 2009 Scheduling Order (docket entry 205, Sept. 30, 2009).  Accordingly, on October 28, 2009, the Court directed that the brief and the exhibits attached thereto be unsealed.

[2]  For ease of reference, the Court will refer to the documents by the letters designated in the Government's privilege log attached as Exhibit 1 to Defendant's Response to Plaintiff's Privilege Determination Motion.  Defendant has noted that documents D and M are duplicates.  Def.'s Response at 6 n.4.

[3]  Plaintiffs have stated that certain production workers are "independent contractors"; that is, plaintiffs claim that certain of the workers have *no* common-law employer and that plaintiffs are therefore entitled to an offset for the FUTA and FICA taxes assessed against them for amounts paid or assessed with respect to these workers.  At several status conferences, defendant had indicated that it intended to file a motion to preclude plaintiffs from raising the independent contractor issue on several grounds, including the doctrine of quasi-estoppel (also known as the duty of consistency).  In its motion for determination of privilege, plaintiffs contended that defendant had waived the attorney-client privilege with respect to the documents at issue by raising the quasi-estoppel defense, which requires a showing that the Government reasonably relied on the taxpayers' representations.  Pls.' Reply at 11; *see In re Baker Hughes*, 215 F.3d 1297, 1302 (Fed. Cir. 2000).  The documents, plaintiffs urged, would reveal information relevant

Plaintiffs advance three arguments why the thirteen documents alleged to be privileged should be produced and also assert that the document the Government has withheld pursuant to I.R.C. § 6103 should be produced with redactions.  First, plaintiffs claim that defendant has failed to sustain its burden of showing the documents are privileged because defendant's privilege log is inadequately detailed.  Pls.' Reply at 8.  Second, plaintiffs claim that the documents are not privileged because "[t]he attorney-client privilege does not apply to communications between IRS personnel and IRS counsel relating to the application of tax law to facts concerning third parties, such as plaintiffs."  Pls.' Reply at 4.  In support of this argument, plaintiffs cite certain case law from the United States Court of Appeals for the District of Columbia Circuit.  Pls.' Reply at 4-8.  Third, plaintiffs claim that defendant has impliedly waived the privilege by putting the communications "at issue" in this litigation.  Pls.' Reply at 11.  With respect to the final document, plaintiffs claim that I.R.C. § 6103 only supports redacting the taxpayer's name and specific identifying information, not withholding document N entirely.  Pls.' Reply at 13-14.

## II.   Attorney-Client Privilege

### A.   Legal Standards

The attorney-client privilege may be invoked to prevent disclosure of confidential communications between a client and an attorney in connection with the rendering of legal advice.  *In re United States*, --- F.3d ----, Misc. No. 908, 2009 WL 5125518, at *4 (Fed. Cir. Dec. 30, 2009); *Cities Serv. Helex v. United States*, 216 Ct. Cl. 470, 475 (1978) (en banc) ("*Helex*"); *Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 810 (2006).  The privilege applies to communications "by the client to the attorney[,] whether incorporated into a communication by the client to the attorney or vice versa."  *Helex*, 216 Ct. Cl. at 475.  In other words, attorney-to-client communications are privileged only if they "reveal, directly or indirectly, the substance of any confidential communication" from the client.  *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987); *see Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1, 14 (2009), *mandamus denied sub nom. In re United States*, 2009 WL 5125518, at *1 (discussing the Federal

---

to the Government's alleged reliance on the taxpayers' representations, specifically whether the Government relied on plaintiffs' statements regarding the independent contractor status of certain production workers and whether such reliance was reasonable given what the Government already knew.  Pls.' Reply at 11-12.  The Court decided to delay ruling on the privilege determination motion until after defendant filed its motion to exclude the independent contractor claim, in order to better determine whether defendant had impliedly waived the privilege.  However, in its motion *in limine* filed on January 15, 2010, defendant did not raise the doctrine of quasi-estoppel as a ground for precluding plaintiffs' assertion of the independent contractor theory.  Instead, defendant's principal argument now is that plaintiffs' independent contractor claim is precluded by the doctrine of variance.  The Court has concluded that defendant's reliance on that doctrine does not give rise to any implied waiver of the attorney-client privilege.  *See infra* pp. 13-14.

Circuit's view with respect to attorney-to-client communications); 1 EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE 76-86 (2007) ("EPSTEIN, ATTORNEY-CLIENT PRIVILEGE") (discussing the different circuit courts' views with respect to attorney-to-client communications).

In determining whether a communication is privileged, the Court must balance two divergent interests:  On the one hand, the Court must uphold the privilege because it is intended to "encourage[] complete disclosure of information in the nature of confidential communications by the client to the attorney during the attorney-client relationship." *Pac. Gas & Elec.*, 69 Fed. Cl. at 810 (quoting *CIT Group/Equip. Fin., Inc. v. United States*, 24 Cl. Ct. 540, 542 (1991)).  On the other hand, however, the privilege impedes discovery and the "search for truth" and it must therefore be "strictly construed."  *Id.*; *see also In re United States*, 2009 WL 5125518, at *4 ("While the attorney-client privilege is the oldest of the privileges for confidential communications known to the common law, it is not an ironclad veil of secrecy.") (internal quotations and citations omitted).

The party asserting the privilege bears the burden of establishing its applicability.  *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007).  RCFC 26(b)(5)(A)(ii) requires the party claiming the privilege to "describe the nature of the . . . communications . . . and [to] do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  This description generally takes the form of a privilege log, but the Federal Rules advisory committee has stated that "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection."  Advisory Comm. Note to 1993 Amendments to Fed. R. Civ. P. 26(b)(5).  In essence, the party must give enough information to allow the Court to determine whether the elements necessary to sustain the privilege have been established.  *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 91 (2007).

> B.      Defendant's Privilege Log is Adequate

Plaintiffs initially claim that defendant's privilege log is not adequate to "enable other parties to assess the claim."  Pls.' Reply at 8.  Plaintiffs argue that the descriptions in the privilege log are conclusory, that several entries do not suggest that any communication from a client to an attorney has even occurred or that communications were made in confidence, and that several entries do not reflect the names of the participants.  Pls.' Reply at 9-10.  In response, defendant states that the Government "need not reveal so much about the contents of a communication as to compromise the privilege."  Defendant's Surreply in Opposition to Plaintiffs' Privilege Determination Motion at 7 (docket entry 212, Oct. 16, 2009)  ("Def.'s Surreply") (quoting *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 309 (2002)); *see also Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 497-98 (2009).

The Court concludes that defendant's privilege log—in combination with the *in camera* review requested by plaintiffs—is adequate to determine whether the elements of the privilege have been established.  *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 91.  The descriptions in defendant's

privilege log—many of which are quoted below—while somewhat skeletal, meet "the requirements of RCFC 26(b)(5) by adequately describing the communications and circumstances surrounding the occurrence of communications between employees of the IRS and the IRS's attorneys." *Id.* at 92. The Court has confirmed through *in camera* review that the attorney-client privilege was appropriately asserted, but the log itself met the Government's minimum obligations.

> C.   *Communications From Agency Personnel to Agency Counsel May Be Privileged and The Court Must Review Whether Defendant Has Met Its Burden to Establish the Privileged Nature of the Documents At Issue*

In determining whether the documents are privileged, the Court begins by addressing plaintiffs' argument that communications between IRS personnel and IRS counsel relating to the application of tax law to facts concerning third parties are not subject to the privilege at all. Then, the Court will describe its document-by-document review to determine whether each document or the pertinent portion thereof may properly be withheld.

> 1.   Communications from IRS Personnel to IRS Counsel May Be Privileged

As a general rule, the attorney-client privilege covers confidential communications from agency personnel to an agency attorney for the purpose of seeking legal advice. *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 91 ("The attorney-client privilege applies not only to private individuals, but also to government employees. Communications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege.").

Plaintiffs argue, however, that several of the documents at issue are not privileged because they communicate non-confidential information collected from third parties and sent from IRS personnel to IRS attorneys. Pls.' Reply at 4-6. Plaintiffs rely on a series of cases from the D.C. Circuit, the most recent of which is *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607 (D.C. Cir. 1997). In *Tax Analysts*, the plaintiff had requested documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The IRS claimed that the documents were exempt from production based on the common-law attorney-client privilege.[4] *Id.* at 608. The document at issue was an IRS field agent's request for a Field Service Advice Memorandum ("FSA"), a type of legal advice memorandum that is "held in high regard and [is] generally followed" by IRS personnel. *Id.* at 609. The D.C. Circuit held, in the context of the FSA, that "when agency auditors communicate information from third parties to the agency's regional counsel and ask for legal advice, the regional counsel's written responses containing 'neutral, objective analyses of agency regulations' are not privileged." *Id.* at 619 (quoting *Coastal States Gas Corp. v. Dep't of*

---

[4] Exemption 5 to FOIA provides an exception to the required disclosure of documents for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exception, therefore, incorporates the common-law attorney-client privilege. *Tax Analysts*, 117 F.3d at 617.

*Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)); *see also Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983).

In so holding, the D.C. Circuit appeared to draw a distinction between whether, on the one hand, the *communication* was made in confidence or, on the other hand, the underlying *information* was confidential in nature. *See Yankee Atomic*, 54 Fed. Cl. at 314. This distinction has not been explicitly adopted by the Federal Circuit and at least one judge of this court has specifically rejected the *Tax Analysts* line of cases. *Yankee Atomic*, 54 Fed. Cl. at 314 ("However, unlike the D.C. Circuit in *Coastal States, Schlefer*, or *Tax Analysts*, the Federal Circuit has never expressly limited the attorney-to-client communications privilege to communications revealing confidential *information*, as opposed to confidential *communication*."); *cf. Jicarilla Apache Nation*, 88 Fed. Cl. at 14.

In *American Standard*, the Federal Circuit held that a client's communication to an attorney was not privileged, noting that it discussed "nonconfidential information" and that a "mere reading of the . . . [patent-validity] opinion 'letter' demonstrates its nonconfidential nature." *Am. Standard*, 828 F.2d at 746 (applying Seventh Circuit law). But the court stated that the fact that the letter was "based on publicly available information" did not "*for that reason alone* [render it] outside the attorney-client privilege." *Id.* at 746 (emphasis added). The court stated that the public nature of the underlying information was one factor in determining whether the document was privileged, but the document was held not to be privileged because "the record [was] devoid of any indication that the validity opinion reveals *the substance of a confidential communication.*" *Id.* at 745 (emphasis added).

In *Spalding Sports*, a later case dealing with the invention record in a patent infringement suit, the Federal Circuit (applying Federal Circuit law) upheld a claim of privilege reaffirming that "[i]f an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000) (quotation omitted). Thus, in both *American Standard* and *Spalding Sports*, the Federal Circuit has recognized that the fact that a client communicates public information does not destroy the privilege if the circumstances surrounding the creation and dissemination of the document show that the communications were intended to be confidential. Therefore, the Court concludes that the Federal Circuit has not adopted the D.C. Circuit's position in the *Tax Analysts* line of cases. Confidential communications between agency personnel and agency attorneys may be privileged even if the underlying information is not confidential in nature.[5]

---

[5] Of course, it is the confidential communication that may be privileged, *not* any underlying information, which, if public, may be discovered by other means. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). For instance, plaintiffs would be free to depose IRS personnel and ask what public information the IRS had uncovered during the audit or to collect the information by other, informal means. *See, e.g., Bernbach v. Timex Corp.*, 174 F.R.D. 9, 10 (D. Conn. 1997) ("[Defendant] argues that the attorney-client privilege does not protect the

Alternatively, even if the Court were to adopt the D.C. Circuit's approach, the documents at issue here are unlike the ones at issue in *Tax Analysts*. In *Tax Analysts*, the D.C. Circuit observed that some of the legal memoranda might "reveal confidential information transmitted by field personnel regarding 'the scope, direction, or emphasis of audit activity'" and held that "[c]ommunications revealing such client confidences are in a different category than those we have been discussing. They are clearly covered by the attorney-client privilege, and the IRS may still assert the privilege with respect to particular portions of FSAs containing this sort of confidential government information." *Tax Analysts*, 117 F.3d at 619-20.

Non-precedential communications from government personnel seeking advice on how to conduct a specific audit do not raise any concern about the agency creating "secret law" that will govern citizens' rights.[6] *Tax Analysts*, 117 F.3d at 619-20; *see also Adamowicz v. Internal Revenue Serv.*, --- F. Supp. 2d ----, 2009 WL 4277237, at *13 (S.D.N.Y. Nov. 24, 2009) (finding communications to IRS counsel to be privileged and distinguishing the *Tax Analysts* line of cases because "as opposed to other types of legal advice, FSAs 'create a body of private law, applied routinely as the government's legal position in its dealings with taxpayers'") (quoting *Tax Analysts*, 117 F.3d at 619). Here, after examining the documents, the Court concludes they are not of the sort that would create precedential guidance to be used by the IRS. This type of communication could not form the basis of a body of "secret law." *Adamowicz*, 2009 WL

---

notebooks because the notes do not contain confidential facts. [Defendant] is correct that the facts contained in the notebooks are not protected. What is protected, however, is the communication of those facts. Therefore, while [defendant] may inquire about the facts that underlie [plaintiff's] allegations, [defendant] is precluded from inquiring into what [plaintiff] communicated to her attorney about the facts underlying her allegations.") (internal citations omitted).

[6] On October 21, 2009, plaintiffs filed a motion for leave to file a supplemental memorandum with respect to the privilege determination motion (docket entry 215, Oct. 21, 2009). The Court granted that motion (docket entry 218, Oct. 23, 2009). Plaintiffs argue that IRS Attorney Neil Shepherd's involvement in the drafting of a Technical Advisory Memorandum ("TAM") with regard to the entertainment industry vitiates a claim of privilege. *Id.* at 2. Plaintiffs also state that it is inconsistent for the Government to claim privilege over Mr. Shepherd's "secret advice," when, as the drafter of a TAM, he was supposed to be acting in an "objective and independent" capacity. *Id.* at 3 (emphasis ommitted). Plaintiffs' argument is incorrect. Mr. Shepherd may fulfill several roles as an IRS attorney, including, at times, writing an "objective and independent" TAM and, at other times, giving "secret"—*i.e.,* confidential—advice regarding the "the scope, direction, or emphasis of audit activity." *See, e.g.,* Internal Revenue Manual § 33.1.1.3(3) ("Associate Chief Counsel assist Field Counsel in providing legal advice in taxpayer specific matters."); *Adamowicz v. Internal Revenue Serv.*, --- F. Supp. 2d ----, 2009 WL 4277237, at *14 (S.D.N.Y. Nov. 24, 2009); Defendant's Opposition to Plaintiff's Motion for Leave to File a Supplemental Memorandum at 2-3 (docket entry 217, Oct. 22, 2009).

4277237, at *14.  Therefore, the Court finds, even accepting the principles enunciated in *Tax Analysts*, that the documents at issue here are not beyond the bounds of the attorney-client privilege.

> 2.  <u>Defendant May Properly Claw Back Documents B, C, F, H, I, K, and L, and the Redacted Portions of Documents A, D/M, E, and G, but not Document J</u>

While the Court has concluded that the documents *may* be privileged, it has not yet determined whether the documents are in fact privileged.  To make such a determination, the Court must conduct a document-by-document review to determine whether the Government has met its burden to establish that specific documents or the redacted portions thereof are privileged.  *Pac. Gas & Elec.*, 69 Fed. Cl. at 812.

> i.  Document A

Document A is logged by defendant as undated "[n]otes memorializing request for legal advice regarding seeking legal advice from IRS District Counsel re employment tax determination,"[7] written by Greg Peake, an IRS field agent.  The Court's inspection reveals that the redacted portion of this document is a note by Mr. Peake intended to aid him in seeking legal advice from an IRS attorney.  The remainder of the document includes information forwarded to the IRS attorney in connection with receiving legal advice.  Because the redacted portion reflects a confidential communication in connection with the seeking of legal advice, that part of the document is privileged.  *See United States v. DeFonte*, 441 F.3d 92, 93 (2d Cir. 2006) (client's notes memorializing communication to attorney are privileged); *Bernbach*, 174 F.R.D. at 9-10 (same); 1 Epstien, Attorney-Client Privilege 130 ("[N]otes which a client makes to tell his attorney or to ask him regarding certain matters as to which he may be seeking legal advice would retain an attorney-client privilege aspect even if taken before an attorney was actually retained or possibly even if never communicated to an attorney directly.  It should be sufficient if their purpose and intent was as an *aide memoire* for the client when meeting with the attorney.").

---

[7] Unless otherwise noted, all document descriptions are quoted from defendant's privilege log.  Def.'s Response at Ex 1.

ii.       Document B

Document B was withheld in its entirety and is described as a "[r]equest made by IRS personnel for legal advice from IRS attorney re applicability of specific Internal Revenue Code provision to employment tax issue." The document is a fax from Randy W. Perrin, a field agent, to Bradley Stanek, Esq., Los Angeles Chief Counsel, and contains a confidential communication from a client to an attorney. Thus, as the Court has already held, the document is privileged even if the underlying information is public so long as the *communication* itself was confidential and "the overall tenor of the document indicates that it is a request for legal advice or services." *Yankee Atomic*, 54 Fed. Cl. at 315 (quoting *Spalding Sports*, 203 F.3d at 806). Therefore, document B is properly withheld as privileged.

iii.      Document C

Document C is a memorandum from Mr. Stanek, Los Angeles Chief Counsel, to Mike Putnam, an IRS employee. The document is described as "[l]egal advice provided by IRS attorney to IRS personnel re applicability of specific Internal Revenue Code provision to employment tax issue." After reviewing the document, the Court finds that the document incorporates and reveals confidential communications made by the client to IRS counsel. It is therefore privileged and properly withheld. *Helex*, 216 Ct. Cl. at 475.

iv.      Documents D and M

Documents D and M are identical and contain what defendant identifies as "[h]andwritten notes of IRS personnel reflecting legal advice provided by Deborah Reale [IRS attorney] regarding issuance of 30-day letter." The redacted portions appear to memorialize questions asked by the client and the answers provided by counsel. They reveal confidential communications from client to attorney for the purposes of obtaining and rendering legal advice and are therefore properly withheld. *DeFonte*, 441 F.3d at 93.

v.       Document E

Document E is another redacted document, described as a "[f]ax coversheet [sic] communicating both facts provided to IRS attorney for purposes of rendering legal advince [sic] in connection with audit and legal advice provided by Neil Shepherd, IRS attorney, in connection with audit." The fax is from an IRS field agent, Gregory Peake, to Deborah Reale, an attorney, and is a confidential communication seeking legal advice. The redacted portion is therefore properly withheld. *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 92.

vi.     Document F

Document F is withheld in its entirety and is a "[m]emo from IRS attorney [Jeffrey R. Davine] to IRS personnel [Greg Peake] providing legal advice re penalty assessments." After inspection, this attorney-to-client communication reveals confidential communications from the client incorporated into a memorandum giving legal advice. The document is properly withheld as privileged. *Helex*, 216 Ct. Cl. at 475.

vii.    Document G

The first page of document G is redacted and includes "[n]otes providing analysis of information for the purposes of requesting legal advice re employment tax audit" written by Mr. Peake. The remainder of document G appears to be publicly available Value Line stock reports that were to be provided to Ms. Reale, an attorney. While the privilege log characterizes the document as Mr. Peake's notes, the redacted portion includes what appears to be a brief letter from Mr. Peake to Ms. Reale in the context of seeking legal advice as to the "scope, direction, or emphasis of audit activity." *Tax Analysts*, 117 F.3d at 619. Thus, the redacted portion is privileged and properly withheld.

viii.   Document H

Document H is withheld in its entirety and is a "[m]emo to counsel [Jeff Davine] seeking legal advice re survey form." The document is a straightforward confidential communication from client to attorney seeking legal advice and is therefore privileged and properly withheld. *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 92.

ix.     Document I

Document I is withheld in its entirety. It is a fax from Mr. Peake, a field agent, "providing analysis of facts for the purpose[] of requesting legal advice regarding common paymaster issues." It is sent to Neil Shephard, an IRS attorney, and is a confidential communication in the context of seeking legal advice as to the "scope, direction, or emphasis of audit activity." *Tax Analysts*, 117 F.3d at 619. The document is therefore privileged and properly withheld.

x.      Document J

Document J is withheld in its entirety and consists of "[a]ttorney notes regarding [a] series of meetings involving IRS attornies [sic], including IRS attorney Neil Shepherd, for purposes of providing legal advice in context of audit." The privilege log does not identify the name of the attorney, but defendant later clarified that the Government now believes that the notes were made by Ms. Reale, IRS counsel. Def.'s Surreply at 7 n.5. To be privileged, document J must memorialize and reveal the substance of a confidential client communication made for the purpose of obtaining legal advice. After close inspection, Ms. Reale's notes in

document J do not appear to satisfy those criteria.  As described above, to qualify as privileged, an attorney's statements must incorporate and reveal a client's communications.  *Helex*, 216 Ct. Cl. at 475.  Ms. Reale's notes do not appear to do so; rather they appear to recount her or other attorneys' views on the significance of certain issues they have encountered in the context of the audit.  Such views, standing alone, are not privileged.[8]  *Am. Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutions*, No. 00 C 6786, 2002 WL 1058776, at *2 (N.D. Ill. March 22, 2002) ("The handwritten notes merely reflect in-house counsel's own uncommunicated thoughts, and such recorded and uncommunicated thoughts fall outside the province of the attorney-client privilege."); *see also Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 6 (N.D. Ill. 1980).

### xi.      Document K

Document K is withheld in its entirety and is described as "[n]otes provided to IRS Attorney [Deborah Reale] for [the] purpose of providing legal advice in connection with audit and concerning legal advice received from another IRS attorney, Neil Shepherd, in connection with audit."  The document is in fact a "case history worksheet," a form completed by an IRS employee documenting questions asked of other IRS employees.  Document K lists the persons contacted, the questions asked, and the answers given by the persons contacted.  The notations in document K appear to be information recorded by Mr. Peake and transmitted in confidence to Ms. Reale for the purpose of receiving legal advice as to the "scope, direction, or emphasis of audit activity."  *Tax Analysts*, 117 F.3d at 619.  Document K is therefore properly withheld as privileged.

### xii.      Document L

Document L is a "[d]raft request for [a Tax Advisory Memorandum ("TAM")] bearing attorney notes and comments" from an IRS district director to IRS Associate Chief Counsel.  Of all the documents, document L is the closest to the type of document involved in *Tax Analysts*. This document recounts facts about a specific taxpayer and requests legal advice.  Document L also includes handwritten comments, identified by the Government as attorney notes, which make corrections and ask follow up questions about the document.  As plaintiffs note, the court in *Tax Analysts* found in the context of I.R.C. § 6103, that there was  "no difference . . . between FSAs and [TAMs].  Both are means by which the national office of the Office of Chief Counsel provides field offices with advice about the tax laws in response to questions regarding specific factual situations."  *Tax Analysts*, 117 F.3d at 616.  Plaintiffs also claim that the document is not privileged because the Government would be required to make this TAM requests public

---

[8] Defendant has not asserted and thus has waived any claim of work-product protection. RCFC 26(b)(5)(A)(i); *Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 242, 248 (D.D.C. 1987) (failure to assert work product separately from attorney-client privilege waives the protection); 2 EPSTEIN, ATTORNEY-CLIENT PRIVILEGE 1027; *cf. Jicarilla Apache Nation*, 88 Fed. Cl. at 16.

pursuant to I.R.C. § 6110.[9]  Pls' Reply at 8.

The Court has already found that the Federal Circuit has not adopted the information/communication distinction relied on by the D.C. Circuit in *Tax Analysts*.  Indeed, under the law of the Federal Circuit, as long as the communication was made in confidence, the nature of the underlying information is not dispositive of whether the communication is privileged.  Moreover, I.R.C. § 6110 does not require the IRS to produce *draft* TAM requests; thus, the IRS is not, as plaintiffs contend, required to make document L public.  I.R.C. § 6110(b)(2); *see Tax Analysts v. I.R.S.*, 416 F. Supp. 2d 119, 129 (D.D.C. 2006), *aff'd*, 495 F.3d 676 (D.C. Cir. 2007).

The attorney notations on document L suggest that it is a draft document that was not intended to be made public.  *Adamowicz*, 2009 WL 4277237, at *14 (communications to agency counsel were privileged when "made with the expectation of confidentiality.").  Document L is a confidential communication from client to attorney and is therefore privileged.  *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 92.

3. <u>Plaintiffs' Waiver Argument is Mooted by Defendant's Abandonment of the Quasi-Estoppel Defense</u>

As discussed above, plaintiffs initially argued that defendant, by raising the defense of quasi-estoppel, waived the attorney-client privilege by putting the privileged documents "at issue" in the litigation.  *See supra* note 3.  Because defendant has abandoned its claim that

---

[9] I.R.C. § 6110 provides, in pertinent part:

(a) **General rule**.–Except as otherwise provided in this section, the text of any written determination and any background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe.

(b) **Definitions**.–For purposes of this section–

* * *

(2) **Background file document**.–The term "background file document" with respect to a written determination includes the request for that written determination, any written material submitted in support of the request, and any communication (written or otherwise) between the Internal Revenue Service and persons outside the Internal Revenue Service in connection with such written determination (other than any communication between the Department of Justice and the Internal Revenue Service relating to a pending civil or criminal case or investigation) received before issuance of the written determination.

plaintiffs are barred from raising the independent contractor theory based on the doctrine of quasi-estoppel, plaintiffs' argument that defendant has waived its attorney-client privilege is moot.

Moreover, the grounds that defendant now raises in its motion *in limine* do not implicate a waiver of the privilege.  Defendant reads one of plaintiffs' filings to suggest that "[p]laintiffs . . . continue to assert that the government has somehow waived its attorney-client privilege by contesting this Court's jurisdiction over plaintiffs' independent contractor theory."  Defendant's Response to Plaintiffs' January 25, 2009 [sic] Status Report at 5-6 (docket entry 254, Jan. 27, 2010).  Defendant refers to the argument in its motion *in limine* that the doctrine of variance bars plaintiffs from raising the independent contractor theory in this litigation.  Def.'s Mot. at 22.  Plaintiffs, in turn, have suggested that one of the grounds that they will raise to oppose the variance claim is that the Government "waived" the variance defense because the IRS actually considered the independent contractor theory in its investigation of plaintiffs' administrative refund claim.[10]  Plaintiffs' Status Report at 3 (docket entry 252, Jan 25. 2010).

While plaintiffs' waiver argument with regard to variance would raise questions about what the IRS considered with respect to plaintiffs' independent contractor theory and when it considered that theory, *plaintiffs'* raising the waiver issue would not give rise to a waiver of the attorney-client privilege by defendant.  *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (for an implied waiver to exist, *the party asserting the privilege* must "put the protected information at issue by making it relevant to the case."); *see also In re EchoStar Commc'ns Corp.,* 448 F.3d 1294, 1301 (Fed. Cir. 2006) (the implied waiver doctrine exists to prevent a party from using "the attorney-client privilege as both a sword and a shield").  Defendant's reliance upon the variance doctrine does not "implicate evidence encompassed in the contents of an attorney-client communication," 1 EPSTEIN, ATTORNEY-CLIENT PRIVILEGE 508, because that doctrine turns on what grounds plaintiffs raised in their administrative claim for refund, not on any of defendant's privileged communications.  I.R.C. § 7422(a); Treas. Reg. § 301.6402-2(b)(1) (1967); *see Computervision Corp. v. United States*, 445 F.3d 1355, 1362-63 (Fed. Cir. 2006).  Even if plaintiffs' waiver argument did implicate defendant's privileged communications, raising such a waiver claim does not entitle plaintiffs to pierce the protection of defendant's attorney-client privilege.  Allowing the privilege to fall merely because an adversary raises an issue that implicates a party's privileged communications would defeat the very purpose of the privilege, namely, to encourage open and frank *confidential* communications between a client and attorney.  *Pac. Gas & Elec.*, 69 Fed. Cl. at 810.  For this reason, defendant's abandonment of the quasi-estoppel defense renders moot plaintiffs' argument that defendant waived its attorney-client

_____

[10] Defendant also argues that plaintiffs are barred from raising the independent contractor issue because (i) plaintiffs previously stipulated that the production workers were employees, Def.'s Mot. at 21; (ii) plaintiffs unduly delayed raising the independent contractor claim, *id.* at 29; and (iii) plaintiffs would have violated labor laws in making certain contributions to union pension plans on behalf of independent contractors and should not now be permitted to take advantage of their own wrongs.  *Id.* at 33.  These theories do not give rise to any waiver by defendant of its attorney-client privilege.

privilege.

## III.    Internal Revenue Code § 6103

The Court now turns to the document that defendant claims must be withheld pursuant to I.R.C. § 6103, namely, document N.  Section 6103 prohibits the IRS from disclosing a taxpayer's "return information," which is defined, in pertinent part, as:

(2) **Return Information.**—The term "return information" means —

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, . . .

\* \* \*

*but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. . . .*

I.R.C. § 6103(b)(2)(A), (b)(2) (emphasis added).  Courts have interpreted this provision broadly to prohibit disclosure of information that would directly or indirectly reveal the taxpayer's identity, *i.e.,* any information that is taxpayer-specific.  *Church of Scientology of Cal. v. Internal Revenue Serv.*, 484 U.S. 9, 13 (1987) ("Congress contemplated not merely the deletion of an identifying name or symbol on a document that contains return information, but agency *reformulation* of the return information into a statistical study or some other composite product.") (internal quotation omitted); *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 322-23 (2000); 13 J. Mertens, *Law of Federal Income Taxation* § 47:158 (William H. Byrnes et al. eds., rev. 2008).

Plaintiffs claim that the Government has redacted more information than is necessary to shield the taxpayer's identity, citing to *First Heights Bank*, 49 Fed. Cl. at 323.  Pls.' Reply at 13-14.  In that case, a judge of this court held that because not all of the information in a document was taxpayer-specific, the document could be redacted and produced without identifying information.  *First Heights Bank*, 49 Fed. Cl. at 323-24.  Defendant, however, contends that document N, even with the taxpayer's name redacted, would reveal taxpayer-specific information.  Def.'s Surreply at 12.  Counsel for defendant clarified defendant's argument at a

status conference, stating that the "particular document [in] question discusses the taxpayer's business practices[,] which is information learned in the context . . . of the audit of that taxpayer. [G]iven the industry in which that taxpayer operates, even redacting the taxpayer's name wouldn't be sufficient; that is, I think the players in that particular industry know each other well enough that the description of . . . [its] business practices, . . . would . . . reveal" its identity. Status Conference Transcript at 4-5 (docket entry 220, Oct. 26, 2009).

After reviewing document N, the Court concludes that most of the information in the document is taxpayer-specific. Unlike in *First Heights Bank*, the information contained in document N is information received by the IRS relating to a specific taxpayer during an audit. The Supreme Court's decision in *Church of Scientology* mandates that *all* the information in document N that would reveal the identity of the taxpayer must be withheld or redacted, not merely the taxpayer's name. *Church of Scientology*, 484 U.S. at 18; *see First Heights Bank*, 46 Fed. Cl. at 323 ("The Court [in *Church of Scientology*] accepted a broader reading [of § 6103], finding that return information encompassed information and data that specifically deals with a particular taxpayer, even if no identifying information is present."). Document N reveals taxpayer-specific business practices learned in the context of an audit. Moreover, the Court agrees with defendant that, after redacting all taxpayer-specific information, the small amount of "generalized" information that remains is meaningless. The document is therefore properly withheld in its entirety.

## CONCLUSION

After reviewing the parties' extensive briefing and having conducted an *in camera* inspection of the documents at issue, the Court concludes and **ORDERS** as follows:

(1)  Defendant has met its burden of establishing that documents B, C, F, H, I, K, and L are subject to the attorney-client privilege and may be properly withheld in their entirety. Plaintiffs are **ORDERED** to destroy all copies of these documents and make no use of them. RCFC 26(b)(5)(B).

(2)  Defendant has met its burden of establishing that the redacted portions of documents A, D/M, E, and G are subject to the attorney-client privilege.  Plaintiffs are **ORDERED** to destroy all un-redacted copies of these documents and make no use of them.  Defendant shall, if it has not already done so, promptly provide plaintiffs with redacted versions of these documents.

(3)  Defendant has not met its burden of establishing that document J is subject to the attorney-client privilege.  Plaintiffs may therefore properly make use of that document.

(4)  Defendant has met its burden of establishing that document N is covered by I.R.C. § 6103 and therefore may properly be withheld.  Plaintiffs are **ORDERED** to destroy all copies of this document and to make no use of it.  RCFC 26(b)(5)(B).

(5)  The parties shall file a notice certifying their compliance with the foregoing provisions by February 9, 2010.

**IT IS SO ORDERED.**

      s/ George W. Miller
      GEORGE W. MILLER
       Judge