## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Cencast Services, L.P., et al.,  <br>   Plaintiffs,  <br>  v.  <br>United States of America,  <br>   Defendant. | Case Numbers: 02-1916 T, 02-1917 T, 02-1918 T, 02-1919 T, 02-1920 T, 02-1921 T, 02-1922 T, 02-1923 T, 02-1924 T, 02-1925 T  <br><br>Judge George W. Miller |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This is a discovery motion, not a merits motion. Nonetheless, defendant devotes nearly thirty pages of its opposition brief to rearguing the merits of its in limine motion. But there are only two questions for decision here. Do the requests seek relevant information; and should the Court order the discovery in view of the burden alleged?

The documents requested—to the extent they have not been destroyed—meet the liberal standard of relevance, and searching for them would not be unduly burdensome in light of the circumstances of this case.

**I.   DOCUMENT DESTRUCTION**

IRS Agent Randy Perrin was the lead agent for much of the examination at issue in this case. Mr. Perrin states that his computer was stolen while it was under his care and custody. He admits that the IRS shredded his paper files in an incident he described as "shocking" and "far from" standard procedure. Perrin Dep. 192-93, 202.[1] And—since filing this motion—plaintiffs have also learned that Mr. Perrin "purged" his email files. According to the IRS' designated witness,

---

[1] March 3, 2010 deposition of Randy Perrin, 192-193, 202 (Exs. 5 and 6 to Pls' Mot. to Compel).

>    Q. And you've said that you think Mr. Perrin purged his e-mail, although you don't know that for sure, right?
>
>    A. That's correct.
>
>    Q. And you've said that … somebody told you that they thought that was okay that he did that because there's—
>
>    A. [T]hat it was in accordance with procedures. I'm sorry, that's a little bit different than okay.

Rule 30(b)(6) Shepherd Dep. 87-88.[2]

  Defendant has produced three documents describing the shredding incident. Defendant has also filed a declaration by Mr. Perrin describing the alleged computer theft and the shredding incident. It has not produced any other documents about any of the unusually robust document destruction surrounding Mr. Perrin's work. Defendant is nonetheless adamant that the destruction was "inadvertent." In fact, the word "inadvertent" (or "inadvertently") appears in its opposition more than 50 times. Defendant asks that the Court take Mr. Perrin at his word. If these incidents were really "inadvertent," defendant should be eager to produce whatever documentation it has about them.

  The documents are relevant to several potential adverse inferences the Court might draw. *First*, the Court might draw adverse inferences against defendant on one or more ultimate issues in this case. To take one example, documents that have been destroyed might have shed light on the question of whether a major studio or some other "production company" was the recipient of services and thus the common-law employer of a material number of production workers. Defendant admits that this was a subject of study reflected in the documents the IRS destroyed. The parties have called this the "studio aggregation issue," and they are conducting extensive

---

[2] April 8, 2010 30(b)(6) deposition of Neil Shepherd, 87-88 (Ex. 1).

discovery to determine the facts. Had the examination team preserved documents relevant to that issue, the documents might have contained admissions harmful to defendant's position or data suggesting a proper quantification of the incidence of "studio aggregation." Defendant fails to address this aspect of the documents' relevance.

*Second*, the Court might draw adverse inferences against defendant about what happened *during* the examination with regard to the independent contractor vs. employee question—*i.e.*, whether production workers payrolled by plaintiffs "qualified" as common-law employees. Defendant aggressively opposes providing the evidence that would allow the Court to evaluate whether to draw such inferences.

On the facts, defendant says this question was "never" evaluated. Defendant quotes Katrina Epps' statement that "I didn't make the determination that they were employees." Def. Br. 10. Defendant neglects to mention to the Court that Ms. Epps changed her testimony during the course of her deposition. For example, she also testified:

> Q. Did you ever consider the question "Are the talent personnel common law employees?" in connection with the DISC examination?
>
> A. It was considered, and it was answered by the way the production companies and the payroll service companies interacted with each other.

Moultry-Rand Dep. 47.[3]

> Q. So let me make sure I understand it. There were two questions. Question 1, "Are the talent personnel common law employees?" Question 2, "If so, which entity are they in an employee-employer relationship with?" * * *
>
> A. Correct.

---

[3] March 4, 2010 deposition of Katrina Moultry-Rand, 47 (Ex. 2).

  Q. And you considered both questions; correct?

  A. One to a lesser degree, one more extensively.

  Q. Thank you. So the answer is yes?

  A. Yes, I considered their status.

Moultry-Rand Dep. 50-51.[4]

  Q. And then, based on the factors which you've described to me, the W-2 and the billing and the other things that you mentioned, based on that and whatever other information you have in your write-up, you determined that the talent personnel qualified as common law employees per Internal Revenue Code Section 3121(d); right? * * *

  A. Their status as employees was determined based upon the factors that I have previously described.

  Q. By you? You made that determination; right?

  A. It was based upon the facts and circumstances. The facts dictated their status, the facts that I reviewed.

  Q. And you were comfortable with the conclusion that you reached in your report that they qualified as common law employees; right?

  A. The conclusion that I reached was supported by the facts.

Moultry-Rand Dep. 84-85.[5]

  Other witnesses also admitted that the "employee vs. independent contractor" question was part of the examination. Mr. Perrin agreed that "the reason why [the IRS] applied the 20-factor test is because that was the relevant standard for determining who, if anyone, was the common law employer of a given individual[.]" Perrin Dep. 37.[6] IRS Agent Gregory Peake—who was the lead agent at the beginning of the examination—discussed this at length in his

---

[4] March 4, 2010 deposition of Katrina Moultry-Rand, 50-51 (Ex. 3).

[5] March 4, 2010 deposition of Katrina Moultry-Rand, 84-85 (Ex. 4).

[6] March 3, 2010 deposition of Randy Perrin, 37 (Ex. 10 to Def's Br.).

- 4 -

testimony:

>   Q. [O]ne of the issues that the team was examining was application of the common law test; right?
>
>   A. Yes.
>
>   Q. And that was for the purpose of deciding . . . not only whether the workers were common law employees of DISC, but whether the workers were common law employees of anyone; right?
>
>   A. I did not do that work.
>
>   Q. But you understood that was the purpose of the work.
>
>   A. Yes.
>
>   Q. I mean, when you apply the 20-factor test, it could be that the application of that test leads to the conclusion that the person is an employee of no one; right?
>
>   A. It could.

Peake Dep. 57-58.[7]  Mr. Peake also testified:

>   Q. You wanted to know who the actual independent contractors were; right?
>
>   A. Yeah.
>
>   Q. And in order to know that, you would have to apply the 20-factor common law test? * * *
>
>   A. We apply that.

Peake Dep. 96.[8]

>   Q. And the audit team understood that applying those [common law] factors could result in DISC being the common law employer, the studio being the common law employer, both being the common law employer or neither being the common law employer; isn't that right? * * *

---

[7] March 2, 2010 deposition of Gregory Peake, 57-58 (Ex. 5).

[8] March 2, 2010 deposition of Gregory Peake, 96 (Ex. 6).

       A. If it's approved by the code and the regulations, I'd go along with you.

Peake Dep. 152-53.[9]

       Q. [D]uring the course of the work that you performed on the audit, did you ever investigate whether workers that received a Form W-2 from DISC were independent contractors and not employees?

       A. Did I investigate that?

       Q. Yes.

       A. I did not investigate that. It was assigned to Katrina Epps.

Peake Dep. 158.[10]

This is not to say that the question on this motion is "which testimony does the Court believe?" Rather, there is contradictory testimony in the record, and the Court may be asked to pick and choose among this testimony. If so, the destruction of documents (and the circumstances of that destruction) may be quite important.

Defendant argues that under no circumstances would the Court be permitted to draw an adverse inference against it because no litigation was anticipated at the time of the shredding and purging. That position is not supported even by the limited record before the Court. Mr. Perrin's June 18, 1998 memorandum acknowledges that the destroyed information "is extremely useful to both Appeals ***and the U.S. District Attorney Office***." (Emphasis supplied). Mr. Perrin added, "A problem may occur during the 'Discovery' phase for the attorneys handing the case—the [taxpayer] may object to any information that they have previously provided being requested again." (Ex. 1 to Pls' Mot. to Compel). This contemporaneous document plainly reflects an

---

[9] March 2, 2010 deposition of Gregory Peake, 152-153 (Ex. 7).

[10] March 2, 2010 deposition of Gregory Peake, 158 (Ex. 8).

awareness by the IRS that litigation was reasonably foreseeable at the time of the shredding incident. The e-mail purge took place even later—after the IRS made the assessments in 2001. Rule 30(b)(6) Shepherd Dep. 77-78.[11]

Because of this specific evidence, defendant is incorrect to rely on *Consolidated Edison Co. v. United States*, 90 Fed. Cl. 228 (2009), in which the record indicated that litigation was not anticipated because of the taxpayer's long history of successful negotiation with the IRS. In contrast to that history, litigation was specifically anticipated, and the relationship between the examination team and the taxpayer was "outright acrimonious" and characterized by "personal animus." Shepherd Dep. 92, 304.[12]

Defendant also contends that the absence of a private right of action renders its statutory duty to preserve records irrelevant. We disagree. The issue on a spoliation motion will be the existence of a "duty to preserve." *See AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 442 n.17 (2007) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-19 (S.D.N.Y. 2003). Violation of a duty imposed by statute is evidence of negligence, if not negligence *per se*, regardless of the existence of a private right of action to enforce the statute. *See generally Restatement (Second) of Torts* § 286 (1965); *Restatement (Third) of Torts: Liability for Phys. & Emot. Harm* § 14 (2005); *see also Scully v. Summers*, 95 Civ. 9091, 2000 U.S. Dist. LEXIS 12519, at 1 (S.D.N.Y., Aug. 30, 2000) (drawing adverse inference against IRS because of negligent destruction of documents; no mention that litigation was anticipated).

---

[11] April 8, 2010 30(b)(6) deposition of Neil Shepherd, 77-78 (Ex. 9).

[12] March 25, 2010 deposition of Neil Shepherd, 92, 304 (Ex. 10).

Finally, defendant contends that the consideration of plaintiffs' theory of independent contractor status during the examination period is irrelevant as a matter of law, relying principally on cases from the Seventh Circuit. Again, we disagree. In this Court, questions concerning variance must be viewed with a practical eye, in view of the "surrounding circumstances." *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 921 (Ct. Cl. 1963). In *American Radiator*, the Court of Claims rejected a variance defense, holding that:

> plaintiff can properly rely on the very specific knowledge gained by the revenue agent in auditing its returns . . . . Our detailed findings show that, in the course of his thorough examination of the . . . returns, the agent clearly came to know that plaintiff had had involuntary liquidations. The agent's reports of his examination of the 1949 and 1950 returns plainly revealed, in computations and breakdown of items, his recognition that plaintiff affirmatively anticipated such refunds. . . . There can therefore be no doubt that, before the expiration of the three-year period, a responsible employee of the Internal Revenue Service had 'notice fairly advising the Commissioner of the nature of the taxpayer's claim.'

*Id.* Similarly, in *Dillon, Read & Co. v. United States*, 15 Cl. Ct. 246, 251-52 (1988) (Bruggink, J.), the Court looked to the audit period for evidence as to whether the IRS was on notice of the taxpayer's theory: "The IRS, after auditing each year's return, concluded that this methodology was incorrect. Although Dillon, Read did not explicitly reassert the appropriateness of a pure Leslie allocation method in its refund claims, the IRS was on notice that the taxpayer believed, at least initially, that such a method was proper. In effect, the IRS expressed its position on plaintiff's alternative theory by disallowing certain interest deductions after the audit." *Id.* On appeal, the Federal Circuit affirmed this aspect of this Court's decision, stating: "We see no error in the Claims Court's treatment of this [variance] issue and need not add to that court's discussion of it." *Dillon, Read & Co. v. United States*, 875 F.3d 293, 296 (Fed. Cir. 1989).

And in Disabled *American Veterans v. United States*, 650 F.2d 1178, 1180 (Ct. Cl. 1981), on which defendant relies, the Court made and relied on factual findings as to what occurred during the examination. The Court ultimately concluded, on the facts there presented, that the taxpayer had not presented sufficient evidence to overcome the "variance" defense. The Court in no way ruled that the events occurring during the examination should be ignored. Even the snippet quoted by defendant (Def. Br. 23) is an *analysis* of the facts that occurred during the examination and claim for refund stages—not a *per se* ruling that the examination phase must be ignored.

In any event, the time to evaluate the proper inferences to draw from the document destruction is when the Court has all the facts before it. We urge the Court to require defendant to provide those facts to plaintiffs, rather than simply take defendant's word (repeated fifty times) that these incidents of document destruction were "inadvertent."

## II.     ELECTRONICALLY STORED INFORMATION

Defendant states that there is no way to recover the ESI that has been purged by the examination team. That is unfortunate. That leaves the ESI in the files of the District Counsel. Defendant states that this ESI would be costly to retrieve. Defendant has submitted a declaration stating that data recovery would require the dedication of resources, and speculating that data recovery might not be possible because of the failure of the IRS to maintain records in a readily retrievable format. The Court should not accept these statements as dispositive.

Rule 26(b)(2)(B) provides, in part,

> ***Specific Limitations on Electronically Stored Information.***
>
> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel

> discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause considering the limits of RCFC 26(b)(2)(C). The court may specify conditions for the discovery.

Defendant's claims of undue cost and burden need not be accepted at face value. *See Spieker v. Quest Cherokee, LLC*, 2009 WL 2168892 (D. Kan. 2009) (ordering ESI produced notwithstanding opposing parties high estimates of cost). Defendant can mitigate the costs by using in-house resources and by postponing a privilege review until after production, with the privilege protected by Fed. R. Evid. 502(d). *Id.*[13] Indeed, plaintiffs' counsel and defendant's counsel have repeatedly and successfully negotiated the return to defendant of documents that defendant produced but then sought to retrieve under a claim of privilege—even without an order of the Court under Rule 502(d).

In the ordinary case, asking the IRS to attempt a data recovery might be a tall order. But this is not an ordinary case. It is a case in which the United States of America has filed claims against plaintiffs for $130 million. It is a case in which the United States has asked this Court to turn a deaf ear to the merits in favor of a technical, jurisdictional defense—a defense as to which significant evidence exclusively in the hands of the IRS has been destroyed. And it is a case in which the IRS admits that the destruction was "shocking," "far from" standard procedure, and "a little bit different than okay."

---

[13] Rule 502(d) provides:

> **Controlling Effect of Court Orders.**
> A federal court order that the attorney-client privilege or work product protection is not waived as a result of disclosure in connection with the litigation pending before the court governs all persons or entities in all state or federal proceedings, whether or not they were parties to the matter before the court, if the order incorporates the agreement of the parties before the court.

In these circumstances, defendant should be required at least to try to recover the only remaining ESI.

### III. CONCLUSION

The Court should enter an Order compelling defendant to produce all documents concerning the shredding incident, including documents concerning investigation of the incident and the related disciplinary actions. Further, pursuant to Rule 37(c)(1), the Court should enter an Order precluding defendant from using any document related to the destruction of documents that it has not produced as evidence in this case.

The Court should also enter an Order compelling defendant to produce e-mail and other electronic documents from the electronic files it can still recover.

Dated: April 15, 2010

Respectfully Submitted,

By: /s/ Kent A. Yalowitz
Kent A. Yalowitz
*Counsel of Record*
Amalia Jorns
Hanna Fox
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399

James P. Joseph
ARNOLD & PORTER LLP
555 Twelfth Street N.W.
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

*Attorneys for Plaintiffs*
*Cencast Services, L.P., et al.*