## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CENCAST SERVICES, L.P., ET AL.,

                Plaintiffs,

      v.

UNITED STATES OF AMERICA,

                Defendant.

Case Numbers: 02-1916 T, 02-1917 T, 02-1918 T, 02-1919 T, 02-1920 T, 02-1921 T, 02-1922 T, 02-1923 T, 02-1924 T, 02-1925 T

Judge George W. Miller

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL AND AMENDED CONSOLIDATED COMPLAINT

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

–and–

555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
(202) 942-5000

*Attorneys for Plaintiffs*
*Cencast Services, L.P., et al.*

Dated: July 16, 2010

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................... ii

I.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO
SUPPLEMENT.......................................................................................... 1

    A.    Plaintiffs Did Not Unduly Delay in Seeking Leave to Supplement
Their Complaint, Nor Would Such a Supplement Prejudice
Defendant.........................................................................................3

    B.    Plaintiffs' $4.3 Million Refund Claim Is Not Futile........................3

    C.    Plaintiffs' Alternative Illegal Exaction Claim Is Not Futile ..........10

II.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO AMEND........................... 12

    A.    Plaintiffs Have Diligently Pursued the Common-Law Employment
Issues.............................................................................................14

    B.    Defendant Would Not Be Prejudiced by Plaintiffs' Proposed
Amendment....................................................................................16

    C.    The Court May Properly Exercise Jurisdiction Over Plaintiffs'
Proposed Amendments ..................................................................16

CONCLUSION.......................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Abram v. City of Buffalo,*
No. 04-CV-441S, 2008 WL 5191675 (W.D.N.Y. Dec. 10, 2008) ........................................14

*Aerolineas Argentinas v. United States,*
77 F.3d 1564 (Fed. Cir. 1996) ...........................................................................................11

*Americold Corporation v. United States,*
28 Fed. Cl. 747 (1993) .........................................................................................................5

*Applegate v. United States,*
52 Fed. Cl. 751 (2002) .........................................................................................................8

*Black v. Secretary of Health and Human Services,*
93 F.3d 781 (Fed. Cir. 1996) ...............................................................................................6

*Boyd v. Commissioner,*
451 F.3d 8 (1st Cir. 2006) ....................................................................................................4

*City of Alexandria v. United States,*
737 F.2d 1022 (Fed. Cir. 1984) .........................................................................................11

*Clapp v. United States,*
117 F. Supp. 576 (Ct. Cl. 1954) .........................................................................................11

*Computervision Corporation v. United States,*
445 F.3d 1355 (Fed. Cir. 2006) .......................................................................................8, 9

*Demes v. United States,*
52 Fed. Cl. 365 (2002) .......................................................................................................12

*Eastport Steamship Corporation v. United States,*
372 F.2d 1002 (Ct. Cl. 1967) .............................................................................................11

*Estate of Akin v. United States,*
31 Fed. Cl. 89 (1994) ...........................................................................................................4

*Faust v. United States,*
33 Fed. Cl. 807 (1995) .........................................................................................................8

*Flora v. United States,*
362 U.S. 145 (1960) .............................................................................................................4

*Franks v. Ross,*
313 F.3d 184 (4th Cir. 2002) ...............................................................................................1

*Fremont Investment & Loan v. Beckley Singleton, Chtd.*,
    No. 2:03-CV-1406-PMP-RJJ, 2007 WL 1213677 (D. Nev. Apr. 24, 2007) ...........................2

*GAF Building Materials Corporation v. Elk Corporation*,
    90 F.3d 479 (Fed. Cir. 1996).............................................................................................6

*Griffin v. School Board*,
    377 U.S. 218 (1964)..........................................................................................................1

*Gulden v. United States*,
    287 Fed. App'x 813 (11th Cir. 2008) ..............................................................................10

*Hines v. United States*,
    658 F. Supp. 2d 139 (D.D.C. 2009).................................................................................5

*Holmes v. Commissioner*,
    47 T.C. 622 (1967)............................................................................................................9

*Houston Industries Incorporated v. United States*,
    78 F.3d 564 (Fed. Cir. 1996)............................................................................................7

*International Paper Company v. United States*,
    36 Fed. Cl. 313 (1996) .....................................................................................................8

*Intrepid v. Pollock*,
    907 F.2d 1125 (Fed. Cir. 1990).........................................................................................1

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ..........................................................................................14

*Klein v. United States*,
    31 Fed. Cl. 614 (1994) .....................................................................................................5

*Lamb v. Internal Revenue Service*,
    No. 94-CV-10325-BC, 1995 WL 560137 (E.D. Mich. June 23, 1995)...............................9

*Larson v. United States*,
    89 Fed. Cl. 363 (2009) ...................................................................................................10

*Lee v. California Institute of Technology*,
    No. CV09-320 CAS (MANx), 2009 WL 1916502 (C.D. Cal. June 30, 2009)................13, 14

*Meaux Surface Protection, Inc. v. Fogleman*,
    607 F.3d 161 (5th Cir. 2010) ..........................................................................................13

*Merck & Co. v. Apotex, Inc.*,
    287 Fed. App'x 884 (Fed. Cir. 2008)...............................................................................14

*Minter v. Prime Equipment Company,*
    451 F.3d 1196 (10th Cir. 2006) ...................................................................................14

*Morris v. Commissioner,*
    T.C. Memo. 2000-381, 2000 WL 1847582 (Dec. 18, 2000) .....................................9

*Nitchman v. Union Pacific Railroad Company,*
    No. 05-CV-01219-EWN-MEH, 2007 WL 389899 (D. Colo. Feb. 1, 2007) ..........14

*Norman v. United States,*
    429 F.3d 1081 (Fed. Cir. 2005)..................................................................................11

*Ohio Valley Environmental Coalition v. United States Army Corps of Engineers,*
    243 F.R.D. 253 (S.D. W. Va. 2007)............................................................................2

*Pier v. Commissioner,*
    96 F.2d 642 (9th Cir. 1938) .........................................................................................9

*Prasco, LLC v. Medicis Pharmaceutical Corporation,*
    537 F.3d 1329 (Fed. Cir. 2008)....................................................................................6

*Rockwell International Corp. v. United States,*
    549 U.S. 457 (2007)......................................................................................................6

*Rocovich v. United States,*
    933 F.2d 991 (Fed. Cir. 1991)......................................................................................4

*Schiff v. United States,*
    24 Cl. Ct. 249 (1991) ...................................................................................................9

*Sharp v. United States,*
    27 Fed. Cl. 52 (1992) ...................................................................................................7

*Sherman v. Winco Fireworks, Inc.,*
    532 F.3d 709 (8th Cir. 2008) .....................................................................................14

*Ulibarri v. City and County of Denver, CO,*
    No. 07-CV-01814-WDM-MJW, 2008 WL 544922 (D. Colo. Feb. 25, 2008) .........2

*Unico Services, Inc. v. United States,*
    71 Fed. Cl. 464 (2006) .................................................................................................4

*United States v. Clintwood Elkhorn Mining Co.,*
    553 U.S. 1 (2001).......................................................................................................12

*United States v. Energy Resources Co.,*
    495 U.S. 545 (1990)....................................................................................................10

*United States v. Fior D'Italia, Inc.*,
    536 U.S. 238 (2002) .................................................................................4

*United States v. Forma*,
    784 F. Supp. 1132 (S.D.N.Y. 1992) .........................................................8

*University of Chicago v. United States*,
    547 F.3d 773 (7th Cir. 2008) ...................................................................4

*Villante v. VanDyke*,
    93 Fed. App'x 307 (2d Cir. 2004)..........................................................14

*Walker v. United Parcel Service, Inc.*,
    240 F.3d 1268 (10th Cir. 2001) ...............................................................1

*Weeks v. New York State Division of Parole*,
    273 F.3d 76 (2d Cir. 2001)........................................................................1

## STATUTES AND OTHER AUTHORITIES:

26 U.S.C. § 6343(b) ..........................................................................................12

26 U.S.C. § 6402(a) ............................................................................................6

26 U.S.C. § 6502(a) ............................................................................................5

26 U.S.C. § 6511(a) ............................................................................................7

26 U.S.C. § 6532(a)(1).........................................................................................3

26 U.S.C. § 7122 ...........................................................................................7, 8

26 U.S.C. § 7122(a) ............................................................................................6

26 U.S.C. § 7422(a) ......................................................................................7, 12

28 U.S.C. § 1346 ..............................................................................................12

28 U.S.C. § 1491 ..............................................................................................12

26 C.F.R. § 301.6343-1(b) ...............................................................................12

RCFC 15(a) ......................................................................................................14

RCFC 15(d).....................................................................................................1, 6

RCFC 16 .............................................................................................................2

RCFC 16(b)....................................................................................................2, 14

6A Charles A. Wright et al.,
   *Federal Practice and Procedure* § 1522.2 (3d ed. 2010) ........................................................13

Executive Order No. 6166, § 5 (June 10, 1933),
   *reprinted as a note following* 5 U.S.C. § 901 (2000)........................................................6, 7, 8

In 2001 and 2002, plaintiffs paid $637,066 in satisfaction of FUTA and FICA deficiency assessments made by the IRS in respect of 214 workers. In 2002, plaintiffs timely filed administrative claims for refund. After the IRS denied the administrative claims, plaintiffs commenced refund suits in this Court. Defendant counterclaimed, seeking $130.3 million in allegedly unpaid FUTA and FICA taxes. In December 2008, while discovery was ongoing in this case, the IRS issued notices of levy against and seized approximately $4.3 million from bank accounts in Nevada maintained by plaintiffs' affiliates. In September 2009, plaintiffs filed administrative claims for refund of the $4.3 million, which the IRS either denied or ignored. Plaintiffs filed this motion in April 2010, seeking leave (a) to supplement their complaints with new refund claims for the $4.3 million, and (b) to file a consolidated amended complaint fleshing out the allegations supporting their original $637 thousand refund claims.

## I.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO SUPPLEMENT

The parties agree that RCFC 15(d) allows a plaintiff to supplement a complaint with claims that arose and facts that occurred after the initial filing of the complaint absent undue delay, prejudice, or futility. *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Leave to File Amended and Supplemental Consolidated Complaint (4/21/10) ("Pl's Br.") at 5-6; Defendant's Response to Motion for Leave to File Amended and Supplemental Consolidated Complaint (6/23/10) ("Def. Br.") at 19 ("Rule 15(d) permits . . . 'supplemental amendments to cover events happening after suit.'").[1] Defendant concedes, of course, that the event giving rise to plaintiffs' new refund claims—the IRS's seizure of $4.3 million in December

---

[1] *See Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) (citing *Griffin v. School Board*, 377 U.S. 218, 227 (1964)); *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (quoting *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001)); *Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 88 (2d Cir. 2001) (holding that leave to supplement should be freely given absent certain reasons including undue delay, undue prejudice, and futility).

2008—occurred after plaintiffs commenced this suit. Def. Br. at 20. And, defendant admits that this Court "necessarily has jurisdiction to enter appropriate orders, including . . . the refund, where appropriate, of amounts collected subsequent to suit and in satisfaction of plaintiffs' [alleged FUTA and FICA liabilities]." Def. Br. at 36. That admission should end the analysis.

Defendant's thirty-seven page opposition brief effectively ignores the motion to supplement.[2] Defendant's opposition does not distinguish between plaintiffs' proposed supplements and their proposed amendments. Def. Br. at 19 (arguing that the proposed supplementation "does not 'cover events happening after suit'" (citation omitted)). Thus, defendant ignores the IRS's collection of $4.3 million, as well as numerous cases in which courts permitted taxpayers to amend or supplement complaints with claims that had accrued after suit was commenced.[3] Defendant also fails to address concerns of judicial economy, potential claim preclusion and the potential for inconsistent judgments, all of which counsel in favor of adjudicating plaintiffs' refund claim for the $4.3 million in this case. As plaintiffs point out, if the District Court in Nevada determines that the levied $4.3 million belongs to plaintiffs—as the United States alleges—but plaintiffs have not timely asserted a refund claim, then plaintiffs would potentially be barred by the statute of limitations from seeking recovery of those seized

---

[2] Defendant does not argue that RCFC 16 applies to plaintiffs' proposed supplements. That is because RCFC 16 and the Court's scheduling order do not apply to motions to supplement. RCFC 16(b); Scheduling Order (1/23/07) (ordering that parties file motions for leave to *amend* by February 23, 2007); *Ohio Valley Envt'l Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 256 (S.D. W. Va. 2007) (Rule 16 inapplicable to motions to supplement); *see Ulibarri v. City & County of Denver, CO*, No. 07-CV-01814-WDM-MJW, 2008 WL 544922, at *1 (D. Colo. Feb. 25, 2008) (applying Rule 16(b) only to motion to amend and not to motion to supplement); *Fremont Inv. & Loan v. Beckley Singleton, Chtd.*, No. 2:03-CV-1406-PMP-RJJ, 2007 WL 1213677, at *7 (D. Nev. Apr. 24, 2007) (doubtful as to whether Rule 16(b) applies to motions to supplement). Even if RCFC 16(b) did apply, plaintiffs' timely response to changed circumstances, here as a result of the IRS's December 2008 levies, provides the requisite good cause. *See Ulibarri*, 2008 WL 544922, at *1; *Fremont*, 2007 WL 1213677, at *7.

[3] *See infra* at 7-8.

sums *even if they prevail on the merits in this case*.  Adjudicating plaintiffs' suit for refund of

the $4.3 million in some other court (or even in another case in this Court) would be a waste of

judicial resources and would risk inconsistent judgments.  Indeed, defendant acknowledges that

this Court has "jurisdiction to enter appropriate orders" for the refund of the $4.3 million.  Def.

Br. at 36.  With such jurisdiction conceded, there is simply no good reason to block the filing of

a supplemental complaint reflecting plaintiffs' demand in this Court for such relief.

### A.   Plaintiffs Did Not Unduly Delay in Seeking Leave to Supplement Their Complaint, Nor Would Such a Supplement Prejudice Defendant

Defendant does not and cannot argue that plaintiffs unduly delayed or caused prejudice in

seeking to supplement their complaint.  Plaintiffs filed administrative refund claims in

September 2009, nine months after the IRS levied the $4.3 million.  In April 2010, one month

after the six-month waiting period imposed by statute (26 U.S.C. § 6532(a)(1)), plaintiffs moved

for leave to file the supplemental complaint.  Defendant does not attack plaintiffs' diligence in

filing the administrative claims or the refund suit, both of which were well within the statutory

allowances.  Because the Court has not yet scheduled a trial date, or even closed discovery,

defendant can make no showing of prejudice by the expansion of the case to include the refund

claim for the $4.3 million.  The claim involves no issues that the parties are not already pursuing

in discovery.

### B.   Plaintiffs' $4.3 Million Refund Claim Is Not Futile

In their 2009 administrative claims for refund of the seized $4.3 million, plaintiffs

explicitly used the words "independent contractors."  Plaintiffs' Proposed Findings of

Uncontroverted Fact in Support of Cross-Motion for Partial Summary Judgment on Subject

Matter Jurisdiction (5/6/10) ¶¶ 72-73.  Accordingly, there is no "substantial variance" between

the proposed supplemental complaint and the 2009 administrative claims for refund. Unable to attack plaintiffs' proposed supplement directly, defendant makes four arguments attacking the validity of the administrative claims themselves.

*First*, defendant argues that plaintiffs should never have filed their 2009 administrative claims because FUTA and FICA taxes "are not divisible tax liabilities." Def. Br. at 28; *id.* at 24 (arguing FUTA and FICA taxes "are each a single and unitary tax"). That is nonsense. Defendant has repeatedly referred to plaintiffs' partial payments of FUTA and FICA taxes as "severable" and "divisible."[4] In support of its new "unitary tax" theory, defendant mischaracterizes the holding of *United States v. Fior D'Italia, Inc.*, 536 U.S. 238 (2002), which considered the IRS's power to use an estimation method in calculating an assessment, *id.* at 243, not whether FICA taxes are divisible. Indeed, court after court has affirmed that FUTA and FICA taxes are "divisible." *See Flora v. United States*, 362 U.S. 145, 171 n.37 (1960) (taxpayers may sue for refund after paying employment taxes due on an individual transaction making up divisible tax); *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) (noting that employment taxes are divisible).[5] That these taxes are divisible should be self-evident here, since plaintiffs' existing complaint seeks a refund of approximately $637 thousand in payments

---

[4] *See, e.g.*, Joint Preliminary Status Report (7/22/03) at 2 (describing the portions paid as severable); Joint Stipulation of Facts (11/10/03) at 4-5 ¶ 8 (describing the portions paid as severable); Joint Status Report (3/23/09) at 7 (Defendant's statement describes the taxes paid as divisible); Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact in Support of Plaintiffs' Motion for Partial Summary Judgment on State Unemployment Insurance Credits (9/21/09) at 8 (Defendant describes payments made by Plaintiffs as divisible).

[5] *See, e.g., Estate of Akin v. United States*, 31 Fed. Cl. 89, 93 (1994) ("The only established exceptions to the full payment rule include assessments covering 'divisible taxes such as excise and employment taxes.'" (quoting *Rocovich*, 933 F.3d at 995)); *see also Unico Servs., Inc. v. United States*, 71 Fed. Cl. 464, 467 (2006) (treating employment taxes as divisible); *Univ. of Chicago v. United States*, 547 F.3d 773, 776 & n.2 (7th Cir. 2008) (treating FICA taxes as divisible); *Boyd v. Comm'r*, 451 F.3d 8, 12 (1st Cir. 2006) (holding employment taxes are divisible).

with respect to 214 workers, as compared to the total assessment of approximately $59 million, plus $18 million in penalties, plus interest.

Taking this assertion even further, defendant argues that the Court has some form of free-floating jurisdiction to order the payment of money without putting the parties to the trouble of actually filing claims (or, presumably, counterclaims) seeking the payment of specified amounts of money. Def. Br. at 36. That assertion is silly. If the Court *automatically* obtains jurisdiction to enter a money judgment in favor of the defendant for millions of dollars, then no defendant would ever bother to bring a counterclaim. But defendant did, consistent with its admission that collecting the balance of plaintiffs' unpaid tax assessment required the government either to file a counterclaim or to "initiat[e] a collection suit" in another court. Defendant's Reply Brief in Support of its Motion *In Limine* and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment (6/23/10) at 15 n.9. Apparently, at least at one time, filing a collection action in federal district court was the government's preferred course of action. *See Klein v. United States*, 31 Fed. Cl. 614, 616 (1994) (calling such actions "routine[]"). Either way, the United States must timely file a claim or counterclaim to collect unpaid taxes. *See* 26 U.S.C. § 6502(a) (period of limitations to collect assessments); *Americold Corp. v. United States*, 28 Fed. Cl. 747, 751 (1993) ("[I]n tax cases, the government's right to assert a counterclaim is circumscribed by the statutory limitation period for the IRS's assertion of a deficiency assessment."); *Hines v. United States*, 658 F. Supp. 2d 139, 147 (D.D.C. 2009) (counterclaim satisfies § 6502). Surely defendant cannot fault plaintiffs for deciding not to sleep on their rights but instead to file administrative claims for refund and, in due course, a refund suit for return of the $4.3 million.[6]

---

[6] Defendant claims that "jurisdiction over a complaint must exist at the time of filing if it is to exist at all." Def. Br. at 25. That is an odd assertion here, where there is absolutely no dispute

Footnote continued on next page

*Second*, defendant argues that the 2009 administrative claims were "nullities." Defendant invokes a statute giving the Attorney General authority to "compromise any . . . case" after it has been referred for prosecution or defense, 26 U.S.C. § 7122(a), and an Executive Order assigning to the Department of Justice "the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense" of a case "in the courts." Executive Order No. 6166, § 5 (June 10, 1933), *reprinted as a note following* 5 U.S.C. § 901 (2000).

Defendant ignores other applicable provisions of the Internal Revenue Code. For example, section 6402(a) expressly gives the IRS authority to pay refunds "within the applicable

---

Footnote continued from previous page

that jurisdiction *always* existed over plaintiffs' complaints filed in 2002, and the only question is whether adjudication of the merits of a particular *issue* is blocked by a Treasury Regulation. The *complaints* were timely filed and all prerequisites to filing were fulfilled. In addition, in *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008), the Federal Circuit made clear that it is the *new* complaint—not the old one—that determines a court's jurisdiction:

> Rule 15(d) expressly allows for supplemental complaints to "cure" defects in the initial complaint. . . . The Supreme Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies. . . .

> [T]he proper focus in determining jurisdiction are "the facts existing at the time the complaint *under consideration* was filed." *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) (emphasis added); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). . . . [I]t is the Amended Complaint that is currently under consideration, and it is the facts alleged in this complaint that form the basis for our review.

*Id.* at 1337 (citations and footnote omitted); *see also Black v. Secretary of Health and Human Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996) ("[A] defect in the plaintiff's case, even a jurisdictional defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances." (citations omitted)).

period of limitations," and section 6511(a) sets a two-year statute of limitations. These statutes plainly grant the IRS administrative power to process administrative claims for refund. Section 7122 does not purport to remove that power, and certainly does not purport to remove the power of the IRS to accept for "filing" an administrative claim—which is all that is required by the "variance" statute anyway. *See* 26 U.S.C. § 7422(a). Section 7122 and the Executive Order, by their terms, concern *only* who may "compromise" (that is, settle) a case after reference for prosecution or defense. Indeed, defendant concedes that the IRS has jurisdiction to continue to engage in other administrative activity, particularly collection activities, without the participation of the Department of Justice. Def. Br. 32-33. Defendant offers no reason why the IRS has administrative power to engage in self-help when it comes to collecting money at issue in litigation, but is impotent to exercise its statutory authority to accept for filing administrative claims for refund during the same period.

The distinction between the authority to process administrative claims for refund and the authority to compromise a "case" is evidenced by decisions by the courts. For example, in *Houston Indus. Inc. v. United States*, 78 F.3d 564 (Fed. Cir. 1996), after the IRS denied the plaintiff's original administrative claim and after the plaintiff filed a tax refund suit in this Court, the plaintiff filed a second administrative claim based on a different theory. *Id.* at 565. Once the requisite six months had passed without IRS action, the court allowed the plaintiff to amend its complaint "to incorporate the second claim for refund . . . ." *Id.* at 565-66. Similarly, in *Sharp v. United States*, 27 Fed. Cl. 52 (1992), the plaintiff filed two administrative claims, the first of which became the basis for the plaintiff's refund suit. *Id.* at 53 n.2. After the case had begun, however, the IRS disallowed the plaintiff's second administrative claim and the court allowed the plaintiff to supplement his complaint to add the second refund claim. *Id.* at 53 & n.2.

This Court's applications of § 7122 and Executive Order No. 6166 have repeatedly shown that these provisions relate to settlement powers and not to administrative actions on refund claims. In *Applegate v. United States*, 52 Fed. Cl. 751 (2002), the Court considered a settlement agreement. *Id.* at 755-60. In rejecting an argument that the settlement was contrary to statute, the Court described Executive Order No. 6166 as granting the Attorney General broad settlement powers. *Id.* at 757. In *Faust v. United States*, 33 Fed. Cl. 807 (1995), the court referred to a compromise agreement under § 7122 as a settlement agreement. *Id.* at 808. Indeed, *International Paper Co. v. United States*, 36 Fed. Cl. 313 (1996), on which defendant relies, makes just this point: "[I]t is beyond the scope of the IRS's authority to *settle* unilaterally a factual issue in a case pending in this court, after administrative proceedings are complete and the case has been referred to the Department of Justice." *Id.* at 321 (emphasis supplied) (citing § 7122 and *United States v. Forma*, 784 F. Supp. 1132, 1139 (S.D.N.Y. 1992) ("Once a tax matter is referred to the Department of Justice, only the Attorney General or a person to whom authority has been delegated may settle the matter.")).

The decision in *Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006), does not support defendant on this point. Defendant relies (Def. Br. at 25-28) on a passage from that opinion addressing the so-called "germaneness" exception to the substantial variance rule. To come within that exception, a taxpayer must (1) timely file an administrative claim for refund and (2) amend that administrative claim before the IRS denies it. The *Computervision* court reasoned that commencing a refund suit rather than amending the administrative claim divested the IRS of jurisdiction to consider *amendments to that administrative claim* for purposes of the germaneness exception. Here, plaintiffs did not purport to amend the old administrative claims for refund of their $637 thousand partial payment. They filed *new* administrative claims, seeking

refund of the newly seized $4.3 million. *Computervision* teaches nothing with respect to the filing of new administrative refund claims for newly seized money.

*Third*, defendant argues that plaintiffs have not made an "unconditional payment" because of pending claims for wrongful levy. Def. Br. at 29-30. The three cases cited by defendant, however, are not on point; those cases hold that, while the government determines whether funds seized from one third-party were actually transferred funds, the government may also seek to seize funds from other potential transferees.[7] In contrast, the alleged owner of levied funds may assert a refund claim for those funds both administratively and in court. For example, the Claims Court in *Schiff v. United States*, 24 Cl. Ct. 249 (1991), considered whether involuntarily collected funds were governed by the Internal Revenue Code's tax refund scheme as a result of the plaintiff's argument that filing an administrative claim was not a jurisdictional prerequisite to seeking a refund of his forcibly collected funds. The Court held that taxpayers must file administrative refund claims regardless of whether the payment was voluntary or involuntary, and that any argument otherwise "is specious . . . [and] completely lacking in merit." *Id.* at 252. In a similar situation involving levies and a lack of administrative claims, the Eastern District of Michigan agreed with the holding in *Schiff* that "[t]he requirement that a refund action first be filed [before bringing suit] applies equally where taxes have been involuntarily collected via levies." *Lamb v. IRS*, No. 94-CV-10325-BC, 1995 WL 560137, at *2 (E.D. Mich. June 23, 1995) (citing *Schiff*, 24 Cl. Ct. at 252). The Eleventh Circuit, in

---

[7] *See Pier v. Comm'r*, 96 F.2d 642, 644 (9th Cir. 1938) (until involuntary payment issues are resolved, "the tax remains unpaid in so far as the rights of the others who may be liable are concerned"); *see also Morris v. Comm'r*, T.C. Memo. 2000-381, 2000 WL 1847582, at *6 (Dec. 18, 2000) ("[S]o long as the possibility exists that [the alleged transferee] could file for a refund, [other potential transferees] cannot be exonerated from transferee liability."); *Holmes v. Comm'r*, 47 T.C. 622, 627-28 (1967).

considering a suit to enjoin the IRS from collecting taxes assessed, explicitly noted that taxpayers whose funds have been levied "may file a claim with the IRS for a refund, and if that claim is denied, . . . may sue for a refund . . . ." *Gulden v. United States*, 287 Fed. App'x 813, 817 (11th Cir. 2008) (citations omitted).  So long as the IRS contends that it has collected money owned by the plaintiffs, it ill behooves the government to contend that plaintiffs do not have a sufficient interest in the money to support a claim for refund.

*Fourth*, defendant argues that, because the IRS has applied the seized $4.3 million solely to one of the plaintiffs (EP Management), only that one taxpayer may bring a refund suit for the $4.3 million. Def. Br. at 29.  In 2008, the IRS issued levies against all plaintiffs, not just against EP Management.  Notices of Levy served on Wells Fargo (12/508) (S.J. App. Tab 51). Defendant considers itself free to reallocate the $4.3 million at its unbridled discretion. *See Larson v. United States*, 89 Fed. Cl. 363, 410-12 (2009) ("When a payment is involuntary, IRS policy is to allocate the payments as it sees fit." (citation omitted)).  After all, defendant contends that the payments are "conditional."  Moreover, plaintiffs themselves may have rights to allocate the payments in some circumstances. *Cf. United States v. Energy Res. Co.*, 495 U.S. 545, 548-49 (1990) (holding that a Chapter 11 debtor may direct the allocation of involuntary tax payments in a confirmed plan of reorganization).  Unless and until a final and binding determination is made as to the allocation of the $4.3 million, the prudent course is to permit all plaintiffs to pursue claims—in the alternative—for the $4.3 million.

## C.    Plaintiffs' Alternative Illegal Exaction Claim Is Not Futile

Plaintiffs' illegal exaction claim is simple.  It alleges that the assessments cannot stand because plaintiffs paid all the FUTA and FICA taxes they owed.  It further alleges that the IRS seized $4.3 million from plaintiffs on account of alleged tax liabilities that they did not actually

owe. Finally, it assumes (in the alternative to plaintiffs' classical refund claim), that defendant is correct in its assertions that FUTA and FICA taxes are "unitary" and that "at the time plaintiffs submitted their Fall 2009 refund claims, the [IRS] had no jurisdiction over matters asserted therein." Def. Br. 26. If the IRS's jurisdiction over the allegedly "unitary" FUTA and FICA liabilities terminated upon reference to the Department of Justice in 2002, then the IRS acted beyond its authority in taking money from the plaintiffs. That is an illegal exaction. As the Court of Claims put it in *Clapp v. United States*, 117 F. Supp. 576, 580 (Ct. Cl. 1954), an illegal exaction has occurred when "the Government has the citizen's money in its pocket." In such a case, "[s]uit can then be maintained under the Tucker Act to recover the money exacted."[8] *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (citations omitted).

Defendant asserts that plaintiffs must demonstrate the existence of a money-mandating statute to allege an illegal exaction. Def. Br. 31-32. We disagree. As the Federal Circuit has taught, "a noncontractual claim can be of *one or the other* of two kinds. The first is for money illegally exacted, as for example, tax refund claims. The other is when the claimant shows that some specific provision of law commands expressly or by implication the payment of money upon proof of conditions he is said to meet, *e.g.*, fifth amendment taking claims or claims by illegally discharged government employees for back pay." *City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed. Cir. 1984) (emphasis supplied). This case is of the "illegally exacted"

---

[8] "An 'illegal exaction,' as that term is generally used, involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.' *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 372 F.2d 1002, 1007 (1967). The classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citations omitted).

kind, not the money-mandating statute kind.[9]

Defendant also contends that plaintiffs have not satisfied § 7422(a) with respect to their illegal exaction claim, citing *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2001). That case held that Section 7422(a) applies to any suit for the recovery of any Internal Revenue tax illegally assessed or collected. Of course, plaintiffs *did* file timely administrative claims for refund of the $4.3 million. Defendant contends that such claims were "legal nullities." It would be an intolerable "Catch-22" if the administrative claims that are a prerequisite to the return of plaintiffs' money can *never* be effective because the IRS was without jurisdiction to consider "the case" when it seized that money.

Defendant last suggests that plaintiffs have not alleged that they have an ownership interest in the $4.3 million. That is not true. Plaintiffs have pleaded such an ownership interest, assuming for purposes of the case that the IRS is correct in its assertion that the bank accounts constituted "property of the taxpayers." *See, e.g.*, Plaintiffs' Proposed First Consolidated Amended Complaint ¶ 72 (Ex. 1 in Motion for Leave to File Amended and Supplemental Complaint (4/21/10)). Plaintiffs must so plead to avoid the whipsaw of inconsistent judgments.

## II.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO AMEND

With their motion to amend, plaintiffs seek to accomplish three things. *First*, plaintiffs seek to merge the various separate complaints into one consolidated complaint; defendant asserts no objection. *Second*, plaintiffs seek to flesh out allegations with newly discovered information

---

[9] In any event, if a money-mandating statute or regulation were necessary, plaintiffs would direct defendant to 26 U.S.C. § 6343(b) and 26 C.F.R. § 301.6343-1(b), which call for the return of levied property upon a finding that the levy was wrongful or that the underlying liability for which the levy was made is satisfied or unenforceable. *See also Demes v. United States*, 52 Fed. Cl. 365, 369 (2002) (holding that 28 U.S.C. §§ 1346 and 1491 qualify as money-mandating provisions).

regarding events that pre-date the litigation; defendant asserts no objection here, either. *Third*, plaintiffs seek to assert that application of the common-law employment test to the 214 workers for whom plaintiffs paid the $637 thousand at issue in the original complaints results in some or all of those workers having no common-law employer, which is an additional ground justifying the existing refund claims; defendant's opposition focuses on this aspect of the motion.

As a threshold matter, defendant asserts that the Court's January 23, 2007 scheduling order established an immutable cutoff date for amending pleadings. We do not read the order as having so harsh an intent or result. The Court issued the scheduling order in response to defendant's suggestion that it wished to amend its answers. (Plaintiffs had no objection.) We read the scheduling order as having established a timeframe for the task at hand, particularly as it did not expressly forbid further amendments—as is the practice of some judges—or establish immutable deadlines for other aspects of the case, such as a discovery cutoff.

Of course, even an order specifically forbidding further amendments may be modified for good cause under RCFC 16(b)(4). As one commentator has observed, "[t]he use of the good-cause standard . . . indicates that there may be more flexibility in allowing some relief," and "relief may be granted if the court finds that the movant has not unduly delayed the action and that the opponent will not be prejudiced by the modification." 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1522.2 (3d ed. 2010) (footnotes omitted). Factors bearing on the diligence of the moving party include: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[10] Some courts

---

[10] *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (quotations and citations omitted); *see also Lee v. Cal. Inst. Tech.*, No. CV09-320 CAS (MANx), 2009 WL

Footnote continued on next page

have stated that the Rule 16(b) good cause analysis "produces essentially the same result as a finding of no undue delay and no undue prejudice under Rule 15(a)."[11]

## A.   Plaintiffs Have Diligently Pursued the Common-Law Employment Issues

The record reflects plaintiffs' diligence in pursuing the common-law employment issues since the Court lifted the stay in this case.  Indeed, through 2009, the parties have cooperated in discovery efforts designed to make the application of the common-law test "triable" with regard to independent contractors.

Some context is useful in evaluating defendant's contentions regarding diligence. Although this case commenced in December 2002, the Court adopted the parties' early suggestion that it rule on a potentially dispositive legal issue and stay all other issues.  Order (Aug. 13, 2003) [Docket No. 36] ("All other issues are STAYED until further order of the court.").  Following the Court's decision on that legal issue, the parties engaged in fruitless settlement discussions until the end of 2006, during which time no discovery took place.  *See, e.g.,* Order (Dec. 18, 2006) [Docket No. 81].

Thus, in 2007, the parties began formulating a discovery plan for resolving the common-

---

Footnote continued from previous page
1916502, at *2 (C.D. Cal. June 30, 2009) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (holding that both the party's diligence and prejudice to opposing side are relevant, though diligence is of primary concern).

[11] *Nitchman v. Union Pac. R.R. Co.*, No. 05-CV-01219-EWN-MEH, 2007 WL 389899, at *2 n.3 (D. Colo. Feb. 1, 2007) (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)); *see Abram v. City of Buffalo*, No. 04-CV-441S, 2008 WL 5191675, at *7 (W.D.N.Y. Dec. 10, 2008) ("The factors to be considered in evaluating good cause are the same factors considered when evaluating a motion for leave to file an amended complaint [under Rule 15(a)].") (citing *Villante v. VanDyke*, 93 Fed. App'x 307, 309 (2d Cir. 2004)). *See generally Merck & Co. v. Apotex, Inc.*, 287 Fed. App'x 884, 888 (Fed. Cir. 2008) (courts should "freely grant leave [to amend] when justice so requires[,]" but "ha[ve] discretion to deny a motion to amend for reasons of 'undue delay, . . . undue prejudice to the opposing party[,] . . . [and] futility of amendment'") (citations omitted).

law employment issues in the case.  The parties' efforts to come to an agreement on a process for

making these complex issues "triable" led naturally to a plan for application of the common-law

employment test to a variety of potential factual scenarios.  As the Court reported in an Order

entered in May 2007, the parties recognized that one of the most "complex" sets of issues to

resolve would be "issues relating to the identity of the common law employer for purposes of

determining the wage base for various types of employees" and that they would retain "one or

more experts to assist them in conducting analysis of various categories of employees and

employers to develop the facts necessary to resolve this first set of issues."  Order (May 2, 2007)

at 1 [Docket No. 93].   Thus, plaintiffs diligently began pursuing the "set" of common-law

employment issues—including analysis of various types of employees—before a discovery plan

was even in place.  As this plan evolved, plaintiffs applied the common-law test, which is used to

determine who, if anyone, is the common-law employer of a particular individual.

　　　　Defendant now says that plaintiffs made a "strategic decision" involving "waiver" of

some portion of that test, Def. Br. at 16, but the record reveals no such waiver.[12]  Indeed, until

the fall of 2009, the parties were in agreement that the possible presence of workers who had *no*

common-law employer (*i.e.*, were "independent contractors") required a cooperative discovery

plan.  In addition to the May 2007 Order, the parties repeatedly agreed that statistical sampling

would be a good way to evaluate and quantify the presence of independent contractors.  For

example, defendant raised no objection to a statistical sampling plan at the status conference on

August 25, 2008.  Status Conf. Tr. (8/25/08) at 6:14-11:7.  In a March 5, 2009 Joint Status

Report, defendant itself stated that the question of independent contractors should "be subject to

---

[12] Accordingly, defendant's citations to cases involving abandonment or waiver of claims, *see*
Def. Br. at 16, are inapplicable.

the same sampling and discovery procedures." Joint Status Report (3/5/09) at 11. On March 23, 2009, the parties submitted a Joint Status Report indicating that "[t]he parties are in agreement that they should begin discovery on the independent contractor issue following submission of plaintiffs' expert reports." Joint Status Report (3/23/2009) at 2. During July and August 2009, the parties and the Court made significant efforts to move the discovery process forward with regard to the presence of independent contractors. In short, plaintiffs raised and prosecuted the presence of independent contractors diligently and without undue delay after the Court lifted its stay.

**B.     Defendant Would Not Be Prejudiced by Plaintiffs' Proposed Amendment**

Plaintiffs' proposed amendment would not prejudice defendant in the slightest. *First*, discovery is ongoing as to the common-law employment issues. Because the Court must apply the common-law employment test in evaluating plaintiffs' claims, this discovery is necessary and relevant to the $637 thousand originally claimed regardless of whether plaintiffs are allowed to amend their complaint to explicitly assert the presence of independent contractors as a ground for refund. Accordingly, no discovery would be required that has not already been commenced or discussed. *Second*, no proceedings would need to be rescheduled as the Court has not yet scheduled a discovery cutoff or a trial date. This case would continue along its current trajectory, with both parties gathering evidence to present their case on the merits.

**C.     The Court May Properly Exercise Jurisdiction Over Plaintiffs' Proposed Amendment**

Defendant suggests that plaintiffs may not assert the presence of independent contractors as part of their original claims for refund of the $637 thousand because such an assertion constitutes a "substantial variance" from the grounds asserted in plaintiffs' administrative claims

for refund of those funds.  The parties have thoroughly briefed that issue in connection with defendant's motion *in limine* and plaintiffs' cross-motion for summary judgment, and we respectfully suggest that the Court must decide it in that context, in the first instance.  If "variance" applies there, then it would likewise apply here.  But, as is more likely, to the extent that the "variance" defense does not apply, plaintiffs are free to press this ground in connection with their claims for refund of the $637 thousand.

## CONCLUSION

The Court should grant plaintiffs leave to file a supplemental and amended consolidated complaint.

Dated: July 16, 2010

Respectfully submitted,

By: /s/ Kent A. Yalowitz
    Kent A. Yalowitz
    *Counsel of Record*
    Jonathan N. Francis
    Amalia W. Jorns
    Hanna Fox
    ARNOLD & PORTER LLP
    399 Park Avenue
    New York, NY  10022-4690
    Telephone:  (212) 715-1000
    Facsimile:  (212) 715-1399

    James P. Joseph
    ARNOLD & PORTER LLP
    555 Twelfth Street N.W.
    Washington, DC  20004-1206
    Telephone:  (202) 942-5000
    Facsimile:  (202) 942-5999

    *Attorneys for Plaintiffs*
    *Cencast Services, L.P., et al.*